## McKAY v. BRADLEY.

---

STATUTE OF LIMITATIONS; D. C. CODE, SECS. 1265, 1267, AND 1638 [31 STAT. AT L. 1389, 1435, CHAP. 854], CONSTRUED.

1. D. C. Code, sec. 1265, providing that "no action, the limitation of which is not otherwise specially prescribed in this section, shall be brought after three years," does not apply to actions on foreign judgments, since such actions are specially provided for in section 1267.

2. D. C. Code, sec. 1267, as amended June 30, 1902, has no other effect than to bar an action upon a judgment of another jurisdiction, that is

barred, at the time of the commencement of the action, by the laws of that jurisdiction; and, unless so barred, an action of a foreign judgment is maintainable in the District of Columbia unless the common-law period of limitation of twenty years has elapsed.

3. A statutory bar of limitation complete before the adoption of the Code of the District of Columbia is one of the "rights" preserved under section 1638, providing that the repeal by section 1637 [31 Stat. at L. 1435, chap. 854], of any statute, shall not affect any "right" accrued.

No. 1596. Submitted December 7, 1905. Decided January 4, 1906.

HEARING on an appeal (specially allowed by the defendant from an order of the Supreme Court of the District of Columbia sustaining a demurrer to his plea of the statute of limitations, in an action on a foreign judgment.                    *Reversed.*

The facts are sufficiently stated in the opinion.

*Mr. A. A. Birney* and *Mr. A. S. Worthington* for the appellant.

*Mr. Fulton Lewis* for the appellee.

Mr. Chief Justice SHEPARD delivered the opinion of the Court:

1. This action was begun April 8, 1905, by John C. Bradley, for the use of the Guarantee Trust & Safe Deposit Company, against the executors of the will of Nathaniel McKay, who died in the District of Columbia, July 10, 1902, upon a judgment for the sum of $2,585.15 recovered against said McKay in one of the supreme courts of the State of New York, on May 8, 1889.

Defendant's pleas were: (1) No such record as alleged; (2) three years' limitation; (3) twelve years' limitation.

Plaintiff's demurrers to the second and third pleas were sustained, and from that order a special appeal was applied for and allowed by this court.

2. Twelve years having elapsed, the judgment declared on was barred on May 9, 1901, by the Maryland statute of limi-

tations of 1715, then in force in the District of Columbia, which provides that "no   *  \*  \*   judgment   \*  \*  \*   shall be good and pleadable, or admitted in evidence, against any person  \*  \*  \*   after  \*  \*  \*   or the debt or thing in action above twelve years' standing." Chap. 23, sec. 6; *Galt* v. *Todd*, 5 App. D. C. 350, 353.

This statute, with others, was repealed or superseded by the District Code, which took effect from and after January 1, 1902. The section thereof relating to limitations of actions upon foreign judgments is the following:

. "Sec. 1267. Every action upon a judgment or decree rendered in any State or territory of the United States, or in any foreign country, shall be barred if, by the laws of such State, territory, or foreign country, such action would there be barred, and the judgment or decree be incapable of being otherwise enforced there; [and, whether so barred or not, no action shall be brought in the District on any such judgment or decree rendered more than ten years before the commencement of such action.]" [31 Stat. at L. 1389, chap. 854.]

This section prescribes two rules of limitation. By the first all judgments barred by the law of the place of recovery are barred in the District. By the second, if not barred by the law of the place of recovery, still no action can be brought on any such judgment rendered more than ten years before the commencement of the action.

On June 30, 1902, section 1267 was amended by striking therefrom the last part shown in brackets above, in which the second rule aforesaid is embodied.

3. The court was clearly right in striking out the second plea, setting up the limitation of three years under a clause of section 1265, which reads: "No action, the limitation of which is not otherwise specially prescribed in this section, shall be brought after three years," etc. [31 Stat. at L. 1389, chap. 854.] The section is lengthy and prescribes periods of limitation for many actions, civil and criminal, specially enumerated therein. The clause aforesaid was apparently intended to remedy a possible omission of some action that might have been properly embraced

in that enumeration. Foreign judgments were provided for specially in section 1267, which still remains in force, though in materially changed form. Domestic judgments were provided for in section 1212 [31 Stat. at L. 1381, chap. 854], which fixes a period of twelve years.

4. Section 1267, as amended, has no other effect than to bar an action upon a judgment of another State that is barred, at the time of the commencement of the action, by the laws of that State. Striking out the last part of the original section, which fixed an express period of limitation of ten years to actions upon all foreign judgments, did not extend the operation of that which remains any farther than above stated. Its language is too plain to admit of any other construction. Unless, then, a judgment rendered in another State is barred by the laws of that State at the time of the commencement of the action upon it in the District of Columbia, there is no statutory period applicable. The only available defense, therefore, founded on lapse of time, is that furnished by the common law, which raises a presumption of payment after twenty years. Why this distinction was made between actions upon domestic and foreign judgments, giving the latter the preference, we are not advised, but, whatever reason there may have been, the matter was one within the exercise of the discretion of the lawmaking power.

5. Accepting the soundness of this construction of the Code and its amendment, the appellants contend that their right to plead the bar of limitation of twelve years, which was complete before the adoption of the Code, was an accrued and substantial right, expressly saved to them by section 1638, which reads as follows:

"Sec. 1638. The repeal by the preceding section of any statute, in whole or in part, shall not affect any act done, or any right accruing or accrued, or any suit or proceeding had or commenced in any civil cause, before such repeal; but all rights and liabilities under the statutes, or parts thereof, so repealed shall continue and may be enforced in the same manner as if such repeal had not been made: Provided, That the provisions of this Code relating to procedure or practice, and not affecting the sub-

stantial rights of parties, shall apply to pending suits or proceedings, civil or criminal." [31 Stat. at L. 1435, chap. 854.]

The denial of this contention by the order sustaining the demurrer is rested upon the doctrine enunciated by the Supreme Court of the United States in *Campbell* v. *Holt,* 115 U. S. 620, 29 L. ed. 483, 6 Sup. Ct. Rep. 209. That case arose under a provision of the Constitution of the State of Texas, adopted in 1869, which declared the suspension of all statutes of limitation within that State from January 28, 1861, until the acceptance of that Constitution by the Congress of the United States, a period of about nine years.

The statutes of limitation had been suspended by acts of the legislature during the Civil War, but it was enacted in 1866 that those suspended statutes should again commence to run on September 2 of that year. One of them applied the bar of two years to actions of the character of that brought by the plaintiff, and she, being under no disability, suffered that time to elapse without bringing her action. After the adoption and acceptance of the Constitution of 1869 she brought her action, and the defendants pleaded the said statute of limitations in bar. Their contention was that the bar of the statute, being complete and perfect, could not as a defense be taken away by the constitutional provision, because to do so would violate the provision of the 14th Amendment to the Constitution of the United States, which declares that no State shall "deprive any person of life, liberty, or property without due process of law." The court, admitting that, where the action is to recover real or personal property, the removal of the bar of the statute of limitations after the same had become perfect would have the effect to deprive the defendant of his property without due process of law, expressly denied that the right to plead the statute of limitations in bar of the recovery of a debt constituted a property right that was beyond the legislative power to take away.

In conclusion Mr. Justice Miller, who delivered the opinion of the majority of the court, said: "We are unable to see how a man can be said to have property in the bar of the statute as a defense to his promise to pay. In the most liberal extension of

the use of the word 'property' to choses in action, to incorporeal rights, it is new to call the defense of lapse of time to the obligation to pay money, property. It is no natural right. It is the creation of conventional law. We can understand a right to enforce the payment of a lawful debt. The Constitution says that no State shall pass any law impairing this obligation. But we do not understand the right to satisfy that obligation by a protracted failure to pay. We can see no right which the promisor has in the law which permits him to plead lapse of time instead of payment, which shall prevent the legislature from repealing that law, because its effect is to make him fulfil his honest obligations."

It is to be borne in mind that there was no saving clause in the constitutional provision under consideration in that case. It was an absolute suspension of all statutes of limitation, without exception, for a period of about nine years, and the enactment of an accompanying provision, saving rights or remedies under any of those statutes, would have been in conflict with its express purpose. Radically different conditions prevailed in the District of Columbia in response to which the Code was enacted; and, to remedy some of the mischiefs that might result from the repeal of many existing laws and the supersession of others, section 1638 was included therein. It becomes necessary, therefore, to consider whether the right to plead the completed bar of the former statute of limitations was one of the rights intended to be saved thereby.

While this was not property, or a natural right, the preservation of which was guaranteed by the 5th Amendment, but only a "creation of conventional law," it was, nevertheless, a valuable privilege. Though not a natural or vested right, as commonly called, it was still a right in the general sense of that word, created by law, in accordance with time-honored public policy. Statutes of limitation have not been enacted to defeat the recovery of just debts, notwithstanding they may often have that effect, but to protect persons from the assertion of ancient claims, however well founded originally, of which the evidence of discharge may be lost. The present case is an apt illustra-

tion of the wisdom and beneficence of such legislation.    The judgment was against a man whose nearby residence was well known.    He was presumably solvent, and yet more than twelve years, during which he was alive, were permitted to elapse without an effort to enforce the judgment.    He lived ten days after the amendment of section 1267, but no action was brought until nearly three years after his death.    Evidence, if any he had, of the payment or discharge of this judgment, so long quiescent, perished with him.

The ordinary injustice of reviving stale demands, especially in view of the conditions above mentioned, is apparent; and, however expedient it may have seemed to abrogate long-existing remedies against the enforcement, after a reasonable lapse of time, of foreign judgments then alive, or thereafter to be rendered, it was both expedient and just to provide against the revival of such as had been completely barred by the former laws before their repeal.

Considerations of the kind mentioned, as well as many others analogous thereto, were evidently in contemplation by the framers of a Code enacted to supersede a mass of statutory law, much of which, enacted years before by the legislature of the State of Maryland, had been in force in the District of Columbia since its cession to the United States by that commonwealth.

If the words "rights," "accrued rights," and "substantial rights," as used in section 1638, are to be construed as meaning natural rights, or rights in the nature of property, and nothing more, the enactment would have been plainly superfluous, for these are amply protected, by the 5th Amendment to the Constitution, from abrogation or invasion.

In view of the mischiefs intended to be prevented, we are of the opinion that those words should be given a broad and comprehensive signification.    It is true that pleas of the statutes of limitation have always been regarded as affecting the remedy, and not the merits; yet remedies are the life of rights, and deprivation of a remedy often amounts to the complete deprivation of a right in its strictest sense.

The remedy afforded by the completed bar of a statute of limi-

tations, though not a right of property, is, as we have said be fore, a valuable privilege, and in the general sense of the word a right that has been everywhere created by law in obedience to dictates of sound public policy.

Giving to section 1638 aforesaid the liberal construction which its spirit demands, we are compelled to regard this as one of the rights under the statutes repealed which it is declared "shall continue and may be enforced in the same manner as if such repeal had not been made." Moreover, the proviso to the section, although not specially applicable to this case, which was not then depending, shows that its framers had in contemplation, not merely vested rights or rights of property, but substantial rights relating to procedure or practice; that is to say, rights inherent in remedies.

These conclusions are in accord with previous decisions of this court involving a construction of section 1638 as applied to different facts which, however, presented questions analogous in their nature. *Costello* v. *Palmer,* 20 App. D. C. 210–221; *Shelley* v. *Wescott,* 23 App. D. C. 135–138.

The first of those cases declared the continuance of a remedy given by sections 794 and 795, D. C. Rev. Stat. (repealed by the Code), providing for the arrest and detention of debtors who fraudulently conveyed their property. In the second, it was held that the right to take a case out of the operation of the statute of limitations, through acknowledgment of the debt by words only, was saved to the plaintiff by the proviso to section 1638, notwithstanding section 1271 of the Code [31 Stat. at L. 1390, chap. 854] provided that all such acknowledgments and promises, to be available, shall be in writing. The contention denied was that, as section 1271 prescribed a rule of evidence merely, and affected only the remedy, and not the rights of the party, it did not affect a substantial right so as to be saved by section 1638.

In *Bechtel* v. *United States,* 101 U. S. 597, 598, 25 L. ed. 1019, 1020, a statute making a transcript from the books and proceedings of the Treasury admissible in evidence in certain actions under the revenue laws was included in the general re-

peal by section 5596, Rev. Stat. (U. S. Comp. Stat. 1901, p. 3750), after having been substituted by section 886 (U. S. Comp. Stat. 1901, p. 670), which differed materially in form and substance. The court held that the transcript was admissible in evidence notwithstanding, by virtue of the provisions of section 5597 (U. S. Comp. Stat. 1901, p. 3751), which saved all rights which had accrued under any of the acts that had been abrogated, and declared that all such rights "shall continue and may be enforced in the same manner as if said repeal had not been made."

Clearly this was not a greater or a better founded right than that to plead the completed bar of a former statute of limitations, which we hold to have been saved by like words in section 1638.

In view of the decisions cited, we consider it unnecessary to review the conflicting decisions of the State courts, involving analogous questions, that have been cited in the briefs of both parties, none of them being directly in point.

For the error committed in striking out the defendant's third plea, the order appealed from will be reversed to that extent, with costs, and the cause remanded for further proceedings not inconsistent with this opinion. It is so ordered. *Reversed.*

A motion by the appellee for a modification of the opinion was overruled February 7, 1906.