## EDWIN M. WILMER *vs.* ANNA PICKA.

*Process: service of—; must be present. Preliminary injunctions; not to be made permanent until final hearing.*

The mere denial of personal service of the party returned "summoned" will not avail to defeat or rebut the sworn return of the officer who claims to have served the writ.

p. 549

Before a valid judgment *in personam* can be rendered, jurisdiction of the person of the defendant must be acquired, either by personal service or process upon him, or by his voluntary appearance.                                     p. 549

The service of a summons must be a personal one; to leave a copy at the office, residence or place of business of the defendant, is not sufficient, nor is it sufficient to serve a summons upon the wife, agent or partner of the defendant.     p. 549

The fact that the defendant had been informed by a daughter that the summons had been left at the house is insufficient.

p. 550

On a hearing upon a motion to dissolve a preliminary injunction, it is error to proceed to a final decree.    p. 553

*Decided November 13th, 1912.*

Appeal from the Circuit Court of Baltimore City (HEUISLER, J.).

The facts are stated in the opinion of the Court.

The cause was argued before BOYD, C. J., BRISCOE, PEARCE, BURKE, THOMAS, PATTISON and STOCKBRIDGE. JJ.

*David Ash,* for the appellant.

*Morrill N. Packard,* for the appellee.

PEARCE, J., delivered the opinion of the Court.

This is an appeal from a decree of the Circuit Court of Baltimore City, overruling a motion for the dissolution of a preliminary injunction and making the same perpetual.

On April 24th, 1894, the appellant, Edwin M. Wilmer, obtained a judgment for $63.18 against Christopher C. Dunn before a justice of the peace of Baltimore City, and on December 20th, 1909, he caused an attachment to be issued thereon for the purpose of reaching assets of Dunn alleged to be in the hands of Anna Picka, the appellee, and the garnishee in the attachment case.

The bill of complaint of the appellee set out the docket entries in the attachment case as follows:

"EDWIN M. WILMER *vs.* ANNA AND ANTON PICKA, Garnishee of Christopher C. Dunn.

Attachment on judgment $63.18, with interest from 4/24/94 and costs.    Writ issued Dec. 20th, 1909, directed to Slunt,

Md.]  Opinion of the Court.

Constable. Returnable January 17th, 1910, 10 A. M. sharp. Returned summoned. Ruled to January 17th, 1910, sharp. January 17th, 1910, plaintiff appeared, garnishee failed to appear, writ heard *ex parte*. Judgment of condemnation for $63.18, with interest from 4/24/1894, and $4.69 costs, to Anna Picka, garnishee.

Witness my hand and seal,<br>JAMES W. CLAY. (Seal)

"Certified Copy.  Magistrates Docket.

There was also filed with the bill as Exhibit No. 1, the following paper:

| Edwin M. Wilmer | In the |
| vs. | Superior Court of Balti- |
| Anna Picka. | more City. |

Baltimore, Jany. 17, 1910—Plaintiff appeared. Garnishee failed to appear. Trial *ex parte*. Judgment of condemnation in favor of plaintiff for sixty-three dollars and eighteen cents, debt, current money, with interest from April 24th, 1894, until paid, and four dollars and sixty-nine cents costs—Costs paid by plaintiff.

Witness my hand and seal,<br>JAMES W. CLAY, JR. (Seal)

Trust Copy—Test:

JAMES W. CLAY, (Seal)<br>Justice of the Peace.

Rec'd. for record, Feby. 6th, 1911, at 3:15 o'clock P. M.; same day recorded, exd. per Stephen C. Little, Clerk, 18 Feby., 1911, *fi. fa.* issued to March R. D. (No. 78)." .

To which is attached the proper certificate of the clerk of the Superior Court.

The bill then alleges that under said *fi. fa.* the sheriff of Baltimore City had levied on the plaintiff's interest in certain leasehold property in Baltimore City, known as No. 966 Collington avenue, and was about to advertise and sell the same to satisfy said judgment of condemnation; that the appellee was not then, and never had been, indebted to said

Dunn in any amount whatever, and never had in her hands any money, credits or property belonging to said Dunn. It further alleged, using here the exact language of the bill, "that when your oratrix was *notified* to appear before Jus-TICE CLAY, she was ill in bed, and sent her daughter, Mary Picka to the said Clay's office, and who related to him her mother's indisposition, and when informed as to the nature of the suit, informed the said Clay that her mother, your oratrix, did not know Christopher C. Dunn, had never known him, did not owe him anything; and did not have in her possession any property of any kind belonging to him, whereupon she was assured by said Clay that her mother would have no more trouble about the matter, and that nothing would be done further with the case against her mother," that relying upon the assurances of said Clay, she believed the suit had been withdrawn, until more than a year later, when the said levy was made on her property; that there was no proof of assets made to warrant said judgment of condemnation, and that the same was rendered by fraud and collusion between said Wilmer and said Clay; and that the judgment against said Dunn was barred by limitations when the attachment was issued thereon, December 20th, 1909.

The appellant answered, alleging that the original judgment against Dunn had been renewed by Scire Facias July 27th, 1906, of which the appellee's solicitor was informed by the appellant March 11th, 1911; that the appellee, in that paragraph of her bill of complaint which we have transcribed, had admitted that she had been regularly and duly summoned; that her failure to plead to the attachment was an admission of assets, and that she had a full and complete remedy at law, which she had waived by her failure to appeal from the judgment of condemnation; he denied that there was any such assurance given by JUSTICE CLAY to the appellee's daughter as was alleged in the bill of complaint, and averred that the justice only told her it was the appellee's duty to personally appear and defend, and he denied all and any fraud or collusion in obtaining the judgment of condemnation.

The general replication was filed and testimony was taken in open Court.

Dunn testified that he knew Edwin M. Wilmer, and said he was the defendant in the judgment upon which the attachment issued; that he had seen Anna Picka, but did not know her, had never spoken to her; had never had any dealings with her, and she had never owed him anything, nor had any money or property belonging to him.

Mary Picka testified that she lived with her mother, Anna Picka; that when the constable came to the house, her mother was ill in bed and the constable did not see her. He only saw the daughter; that he gave witness a slip of paper and told her to go up to Wilmer's office on Courtland street; that when the time came, she went up, as her mother was sick and could not go; that she there saw JUSTICE CLAY, and gave him the slip of paper, and told him her mother was sick in bed, and he said to her, "All right, don't bother, nothing won't be the matter, don't worry about it," and she went home and told her mother what he said, and they heard no more about it until the next February when the record shows the *fi. fa.* was issued.

Anna Picka, the appellee, was unable to speak a word of English and testified through an interpreter. She said that about a year before, she was sick, and then received "a notice from a certain Mr. Dunn whom she did not know." She was asked "were you ever summoned by a constable to appear in the case of *Edwin M. Wilmer* v. *Anna Picka*, and was that summons given to you personally?" but upon objection by the appellant, she was not allowed to answer that question. She said she never knew him, never owed him anything, and never had in her possession any money or property belonging to him.

James W. Clay, for the appellant, testified that he was the justice who issued the writ; that he had "a branch office" in a back room of Mr. Wilmer's office at a very low rent; that about half an hour after the usual time was set. Mary Picka came in and said her mother had sent her, but did not

say her mother was ill in bed, but only that "she could not come." I told her not to worry, but to go home and send her mother to me, but she did not come and I never saw the mother. I held the case *sub curia* three days; did not issue any judgment for three days, thinking she might come, but she didn't. He said no one gave him any information or testimony that there was anything owing by Mrs. Picka to Dunn, and that it was not his place to know where the money was coming from.

Edwin M. Wilmer testified that on January 17th, 1910, "he waited quite awhile at the justice's office, and finally a young girl came in and handed to the justice *the notice which had been sent out for delivery to the garnishee*," and she said her mother had sent that notice up to the justice and to say that she could not come. The justice told her the garnishee must appear to the writ. "She then left *and the justice decided to call the case,* and the plaintiff, myself, in that case filed the judgment against Dunn and read the writ." He said that was substantially all that was said, and that there was no fraud or collusion in obtaining the judgment of condemnation, and no inducement held out by him to procure it.

It is obvious from this summary of the testimony that the primary and vital question for determination is whether the justice ever obtained jurisdiction over the person of the appellee, either by *legal service* of the summons to appear, or by a voluntary appearance on her part, and that this is a question of fact, determinable in an equity case by the Court.

In *Wilmer* v. *Epstin,* 116 Md. 140, the object of the suit was to restrain the enforcement of a judgment obtained before a justice of the peace and alleged to be void for want of jurisdiction. The appellant in that case was the same person who is appellant here, and there, the appellees were made garnishees of one O'Grady in an attachment issued by Wilmer on a judgment previously obtained by him against O'Grady, and a judgment of condemnation was rendered against the garnishees. Their bill alleged they were never

summoned in the case in which judgment of condemnation was rendered, and that the judgment was not recorded and notice given of its entry, until the time for appeal had expired; and that the judgment of condemnation was consequently void.

In that case, in declaring the judgment of condemnation to be void for want of proper service of process upon the garnishee, the Court said: "It is elementary law, that before a valid judgment *in personam* can be rendered, jurisdiction of the person of the defendant must be acquired either by personal service of process upon him or by his voluntary appearance. 2 *Poe on Pleading and Practice,* 3rd ed., sec. 62. The service of the summons must be a personal one, and the officer charged with the duty of serving it, is not authorized to leave a copy of it at the office, residence, or place of business of the defendant and return him as summoned, nor to serve it upon his wife, agent or partner." In *Hanley* v. *Donoghue,* 59 Md. 243, the Court said: "It is essential to the validity of a judgment *in personam* that the Court should have jurisdiction over the parties, and if rendered without such jurisdiction, it is a mere nullity * * * and may be assailed at all times and in all proceedings by which it is sought to be enforced."

In *Wilmer* v. *Epstein, supra,* it affirmatively appeared from the return of the constable that the only service was upon an individual, not a member of the firm intended to be made garnishees; but the failure to make personal service, even when a *prima facie* case is made by a return of summoned, may be established otherwise.

It is true that the mere denial of personal service *by the party returned summoned,* will not avail to defeat or rebut the sworn return of the officer, but we are of opinion that it sufficiently appears from all the evidence in this record, that the process was not personally served upon the garnishee and that she did not voluntarily appear to the attachment.

Mary Picka, a competent witness, swears that the officer never saw her mother, and the mother was not allowed to

answer whether the process was personally served upon her. The language used in the bill, "that when she was notified to appear before JUSTICE CLAY she was ill in bed," does not necessarily import personal service, and in the light of the positive testimony of the daughter that it was not so served, and in the light of the denial to Anna Picka of the right to testify upon that point, cannot be properly or fairly held to be an admission of personal service. The constable's return is not contained in the record, was not produced to support the docket entry of "summoned," nor was any evidence offered of his death, or of any other inability to produce him to support the docket entry and to contradict the positive testimony of the daughter. Not only so, but Mr. Wilmer's testimony is positive that the daughter, on January 17th, 1910, herself "handed the justice the notice which had been sent out for delivery to the garnishee" that is the process to be served; the constable could not therefore have previously made any return of the process, and the docket entries set out in the bill of complaint show the writ was returnable January 17th, 1910; it was not returned previously, and was only then returned by the daughter to the justice and immediately ruled to January 17th, 1910, and the matter heard *ex parte.* It would be a mockery of justice in the face of the testimony in this case to hold, either that there is adequate proof of personal service of process, or of a voluntary appearance, in lieu of personal service, by this woman who could not speak or understand the English language.

It does not matter that she may have been informed by her daughter of the nature of the proceeding. This was expressly held in the *Epstein case, supra,* and sustained a Michigan decision, *Wilcke* v. *Duross,* 107 N. W. Rep. 907, where process was served upon the daughter of the person intended to be summoned, and the latter had actual knowledge of the proceeding, but the Court held this gave no jurisdiction to enter judgment against the person sought to be served by the

writ, and that equity would restrain its enforcement, and other cases were cited to the same effect in the *Epstein case, supra.* It may not be amiss to direct attention to a serious misconception of duty and power on the part of the justice in this case, who testified that there was no proof of assets, and no necessity for such proof, and also to the contradiction between his testimony that he waited three days after the daughter appeared on January 17th, 1910, before entering judgment of condemnation, and his own record, which showed he entered judgment on the day she appeared, January 17th, 1910. Some light is shed upon this feature of the case by the testimony of Mr. Wilmer, when he said that "After the girl left the justice decided to call the case," and that he himself filed the judgment against Dunn and read the writ, as an all-sufficient foundation for jurisdiction of the person of the garnishee, and as dispensing with the proof of assets, thus strongly suggesting that the plaintiff was not only the friend of the Justice, as testified to by the Justice, but also his philosopher and guide.

The conclusion we have reached on the question of jurisdiction of the person of the garnishee renders it unnecessary to advert to any other questions presented in the briefs or argued at bar as to the invalidity of the judgment of condemnation, and if the decree had been passed on final hearing we would not hesitate to affirm it. But the hearing was upon motion to dissolve the injunction, and not upon final hearing, and in such case it has always been held error to proceed to final decree, even since the Acts of 1835, Ch. 380, authorizing testimony to be taken on motion to dissolve; the most that can be asked under such circumstances is a continuance of the injunction till final hearing. *Hamilton* v. *Whitridge,* 11 Md. 141; *Huston* v. *Ditto,* 20 Md. 332; *Dougherty* v. *Piel,* 52 Md. 425; *Blundon* v. *Crosier,* 93 Md. 357. There is enough disclosed in the testimony, notwithstanding the denials contained in the answer, to justify the continuance of

the injunction till final hearing. *Phil. Trust Co.* v. *Scott,* 45 Md. 454; *My Md. Lodge* v. *Adt,* 100 Md. 253. For this reason we feel constrained to reverse the decree and remand the case for final hearing, but we shall direct the costs to abide the result of such final hearing.

> *Decree reversed and cause remanded, the injunction to be continued until final hearing. The costs in this Court and in the Court below to abide the final result.*