# JAMES H. ADKINS ET AL.

## *vs.*

## SELBYVILLE MANUFACTURING COMPANY.

*Writs of summons: service of—; several defendants; reading of writ; return; presumption in favor of.*

It is proper practice for the officer to read the writ of summons to the defendant, but he is not required to "specifically address" his remarks to each defendant when he reads the summons in the presence of two or more.                    p. 504

The return to a summons is *prima facie* evidence of its truth, and will prevail unless overcome by clear evidence, and every presumption will be made in its favor.                    p. 501.

Where there are two or more defendants, the return should state that all were summoned, but where in such case the return is simply "summoned," it is understood that all were summoned.                    p. 502

*Decided May 14th, 1919.*

Appeal from the Circuit Court of Wicomoco County. (BAILEY, J.)

The facts are stated in the opinion of the Court.

The cause was argued before BOYD, C. J., BRISCOE, BURKE, THOMAS, URNER, STOCKBRIDGE and ADKINS, JJ.

*Thomas H. Lewis,* for the appellants.

*F. Leonard Wailes* (with whom was *Ellegood, Freeny & Wailes* on the brief), for the appellee.

Boyd, C. J., delivered the opinion of the Court.

This is an appeal from an order overruling a motion to strike out a judgment obtained by the appellee against the three appellants. The reason stated in the motion which was relied on in this Court, and so far as appears from the record was the only one relied on below, is "Because the defendants were not summoned to appear in the said cause." Although the petition was sworn to by James H. Adkins, it was not denied that Charles W. Adkins was summoned and it was not contended in this Court that James H. Adkins was not summoned. It is true that the record shows that he testified that he did not remember that any summons in this suit had been served on him, but he did remember that the sheriff came to his house some time in the winter or early spring, which he said was for the purpose of summoning him to appear before Mr. Powell, who is a justice of the peace, "on the Will Baker bill." He further testified that the only time the sheriff was there to his knowledge after that was when he came with Mr. Long and Mr. Johnson. It is not claimed that the latter were there on the occasion involved in this controversy, and Mrs. Adkins testified that the sheriff was not then there on business. Her testimony contradicts that of her husband, as she testified to seeing the sheriff when he made a levy for Will Baker, and at the time referred to in the record, when the sheriff claims he summoned her and her husband, and then when he was there with Mr. Long and Mr. Johnson. The sheriff testified that he never had the summons for James H. Adkins to appear before Justice Powell in the Baker matter, and Wesley C. Lewis, who was spoken of at the hearing as a constable, testified that he and not the sheriff served the writ for Baker. The above testimony and other evidence in the record conclusively show that James H. Adkins was summoned in this case at his house, and the testimony of the sheriff that he summoned Charles W. Adkins was not denied.

Two of the three defendants were, therefore, unquestionaby summoned, and it only remains to determine whether Mrs. Adkins was. It is contended on the part of the appel-

lants that the evidence shows that in fact she was not summoned, but that even if the evidence of the sheriff be accepted as a correct version of what took place, it was not a valid service of the summons.  A judgment by default was rendered against the appellants on August 14, 1918, and on September 4th an attachment was issued on that judgment. On September 18th the motion to strike out the judgment was filed—the docket entries also showing that a motion to strike it out was made on September 9th, but the formal motion, assigning the reasons, was filed on the 18th.  The motion to strike out the judgment was promptly made, and hence there is no question of unreasonable delay in making it, as often arises in cases of this kind.

The summons in question was issued January 10, 1918, returnable the second Monday of March, and was returned, "summoned severally," but Mrs. Adkins testified that she never knew anything about it until the attachment was laid, and did not know that a suit was pending against her.  In response to the request to state the occasions on which she had seen Sheriff Chatham at her house, she said: "The first time that I ever saw him there, he came up there one day and my husband met him on the porch, of course I did not know the man, and after my husband came back in the house I asked him who it was, and he said it was Mr. Chatham, and I asked him where he was going and he said he was going to Mr. Tobe Ralph.  That is all about that."  She was testifying at the September Term, 1918, of the Court, and said it was some time "last winter."  She said, as stated above, that the next time she saw him was when he came to levy for Will Baker, and they were the only times he was there excepting when he was with Long and Johnson.  She also stated that a Mr. Shockley was at the house the first time the sheriff was there, that he was sitting near the stove, not far from the door, and that she was in the room near the stove when the sheriff came; that there was a team standing out in the road, but she did not know who was in the vehicle.  We have stated above the evidence of James H. Adkins.

The plaintiff called the sheriff, who testified that he had several summonses to serve in the section where the Adkins live; that he hired a team, got a driver and drove through that section, and met Charles W. Adkins on the road and summoned him; that "we went on through by Mr. Adkins' house and I stopped there and knocked on the door. He came to the door and I told him I had a summons for him of Selbyville Manufacturing Company, and also for his wife. He said his wife was in the house. The door was open and Mrs. Adkins heard the summons read as well as Mr. Adkins. They both understood the summons. They both understood what it was for." He also testified that "Mrs. Adkins came to the door and Mr. Adkins came to the door first," that he did not see anyone else and did not go into the house. In the cross-examination of the sheriff, the following appears: "Q. As I understand it, you went to the door and talked to Mr. Adkins, said that you had a summons for him, and his wife, in a case in which they were sued by the Selbyville Manufacturing Company, and that the door was open and that Mrs. Adkins was close by and heard the statement of yours. Is that correct? A. Yes, sir; that is correct. Q. You did not specifically address your remarks to Mrs. Adkins? A. No, sir. Q. Where was Mrs. Adkins standing when you had this conversation? A. Mrs. Adkins was in the room at the time Mr. Adkins came to the door and I told him I had a summons for him, his wife and his son, and that I had met his son on the road and that I had summoned him. Mrs. Adkins was standing near enough to hear every word that I read, and the summons was read to both of them. Q. What, if anything, did either of them say? A. I don't remember any remarks they made about it. I don't remember now any remarks. Q. You are sure that the summons was read in the presence of both of them? A. Yes, sir; I read it to the son on the road and to both of them."

The only other evidence in the record is that of William H. Shockley, who said he was at the Adkins house when the sheriff came; that Mr. and Mrs. Adkins were in the room

with him. This appears in his testimony: "Q. Do you remember what happened when the sheriff came to the house? If so, please state what did happen? A. No, sir; I don't remember but very little about it. I did not take but very little account of it. I remember him coming up there a riding. I don't know whether he thumped at the door or not, but Mr. Adkins went out to him. Q. Where did Mrs. Adkins go? A. Well, she was knocking about the room. I don't know whether she went out or did not go out. Q. Did the sheriff come into the room? A. No, sir. Q. Did you hear him read the writ? A. I don't remember that I heard anything about it. I don't remember anything that I heard about it. Q. Do you remember whether or not Mr. Adkins left the house and went out on the porch? A. Yes, sir; he was out on the porch. Q. Was the door opened or closed? A. Well, now, I cannot tell you sure about that. There was glass in the door; I remember seeing Mr. Chatham. I don't remember whether the door was open or I saw him through the glass."

He further said that he did not think that Mrs. Adkins went out on the porch, that he could not be positive whether she did or not, but did not think so; that he saw the sheriff when he came up on the porch, that he had no recollection whether or not the sheriff read the writ, and in reply to what he meant by that, he said, "I mean that I did not hear him read it," and again he said, "He did not read it for me to hear it." It is apparent that Shockley knew very little about what happened, and all that he testified to can be accepted as correct without materially affecting the question. Mr. Adkins is contradicted by his wife, the sheriff and the witness Lewis. The question of fact is thus reduced to the evidence of Mrs. Adkins and the sheriff.

"The return is *prima facie* evidence of its truth, and will prevail unless overcome by clear evidence. Indeed, every presumption will be made in its favor." 2 *Poe on Pl. and Pr.,* sec. 75. In *Windwart* v. *Allen,* 13 Md. 196, it was said: "Intendments will be made in support of the acts of minis-

terial officers, where they appear by the return of process to
have discharged their duty, and the *onus probandi* rests on
the party impeaching such acts." See also *Abell* v. *Simon,*
49 Md. 318; *Taylor* v. *Welslager,* 90 Md. 409. Others cases
might be cited, but it would be useless to do so, as there can
be no doubt about the general rule. The appellants have not
only failed to overcome the return of the sheriff, but the evi-
dence in the record thoroughly establishes the correctness of
it. In addition to the presumption, the probabilities are all
with the sheriff. It cannot be doubted that he did summon
the husband at his house, after summoning Charles W.
Adkins on the road, and Mrs. Adkins admits that she was at
the house, although she says she was inside of the room into
which the door led from the porch, where the sheriff was
standing. It is certainly much more probable that the sheriff
would, under those circumstances, summon her than that he
would neglect his plain duty—especially when it could so
easily have been performed. He went to the house for the
purpose of summoning them, and, as both were there, where
he could summon the wife as well as the husband, it would
be impossible to furnish any reasonable explanation for his
failure to summon her.

Being satisfied that the sheriff's explanation of what took
place must be accepted as correct, it only remains to deter-
mine whether what he says he did is sufficient. Unlike the
statutes of many States, ours does not provide for the method
of serving a summons in an ordinary action at law. In such
cases the usual return throughout the State is simply "sum-
moned." When there are more than one defendant, it is best
to state plainly that *all* were summoned, although where the
return is simply "summoned," and no exception is made, it
is understood that all were summoned. In this case the re-
turn of "summoned severally" was clearly intended to mean
that the sheriff had summoned each one, and, as we have
found, as a matter of fact that was done. Section 144, Arti-
cle 75 of the Code provides that, "In all civil suits or actions
in the circuit courts, where *capias ad respondendum* formerly

issued, a writ of summons shall be issued for the defendant, in which shall be stated the purpose for which he is summoned," etc.   In *Ritter* v. *Offutt,* 40 Md. 207, it was contended that writs issued in the general form there followed, which is the same as in this case, were void because they must state the purpose for which the party is sued, precisely as was previously required in writs of *capias ad respondendum.*  But the Court held that a summons sufficiently states the purpose for which the defendant is summoned, "when it states that he is summoned to answer an action at the suit of the plaintiff, who is named in the summons."   There is no requirement that a copy be served in such actions, nor is there any provision as to what shall be sufficient service.   We have statutes requiring certain things to be done in serving process in some suits and proceedings.   For example, in an action of ejectment, "A copy of the declaration, with a writ of summons, as in other cases, addressed to the defendant, shall be served on each of the defendants," provision being then made, in case they can not be found, etc.; in suits against corporations, process can be served on certain officers or agents, named in section 87 of Article 23 of the Code, "provided, that in all cases mentioned in this section, the officer serving process shall leave a copy thereof with the person upon whom it is served;" so, in equity procedings, section 145 of Article 16 provides that "The service of process to require appearance shall be by reading the summons, or other writ or order, to the party to be served therewith; or by delivering a copy of the same to such party," and then provision is made in case the party is an infant, or *non compos mentis.*   Other instances might be cited to show that, when the Legislature deems it necessary or proper, it makes special provision for service, but in ordinary actions at law, it has not done so.

In this case the sheriff, according to his statement, read the summons to both the husband and the wife.   It commanded him to summon the three to answer an action of the appellee. The appellants contended that the sheriff should have specifically addressed his remarks to Mrs. Adkins, which he admits

he did not do, but there is no requirement in our statute that he should do so. According to his evidence, he did all that was necessary to inform both of them that they were summoned to appear at the time named for the purpose mentioned. It is a proper practice for the officer to read the summons to the party, but there is no reason for requiring him to "specifically address" his remarks to all the defendants when he reads the summons to two or more. It is said in 19 *Enc. and Pr.*, 617, "The officer need not, in reading, address himself directly to the defendant, and it is enough if the reading be in his presence and hearing." That is said in connection with cases in States where the statute require the summons to be read, and surely where, as in this state, there is no such statutory requirement, it was not necessary for the sheriff to address his remarks to Mrs. Adkins. It was suggested at the argument that she might be deaf and could not hear the summons. If she was, and that had been deemed material, she could have so testified. There is nothing in the record to show any infirmity or other cause to prevent her from hearing the reading of the summons.

The case of *Hynek* v. *Englest*, 11 Ia. 210, was particularly relied on by the appellants to show that there was no sufficient service, but that was under a statute of Iowa which required the service to be made by reading the notice to the defendant and giving him a copy of it if demanded. In *Grosvenor* v. *Henry*, 27 Ia. 269, it was held that a return that notice was "personally served by reading in the hearing of the defendant and leaving a true copy with him," was sufficient. *Hynek* v. *Englest, supra,* and *Anderson* v. *Kerr,* 10 Ia. 233, are there considered and explained. In Iowa, as well as in other States, there are statutes which provide what shall be done in the service of writs, etc., and it would serve no good purpose to prolong this opinion by referring to other cases regulated by statutes. It follows that the order of the lower Court overruling the motion to strike out the judgment must be affirmed.

*Order affirmed, the appellants to pay the costs.*