SAMUEL WEISMAN *v.* MYER DAVITZ

[Nos. 16, 17, April Term, 1938.]

*Decided May 18th, 1938.*

448

The causes were argued before BOND, C. J., URNER, OFFUTT, PARKE, SLOAN, MITCHELL, SHEHAN, and JOHN-SON, JJ.

*Eugene Schonfield,* with whom were *Bernard E. Stern* and *Schonfield & Schonfield* on the brief, for the appellant.

*W. Albert Menchine* and *Martin M. Shor,* with whom was *Jacob Blum* on the brief, for the appellee.

URNER, J., delivered the opinion of the Court.

On October 25th, 1930, the appellant signed a promissory note for $1,200, payable to the appellee four months after date, and executed a mortgage on certain leasehold property in Baltimore City to secure the payment of the note at maturity. The consideration for the note and mortgage was a loan from the appellee to the appellant's father, who, because of the existence of judgments against him, had caused the title to the mortgaged property to be vested in his son, and for that reason the participation of the appellant in the transaction was necessary. Another loan was procured by the appellant's father on a promissory note for $1,000 signed by his son, the appellant, payable ninety days after date, and secured by his mortgage on other leasehold estate in Baltimore City to which he held the record title. In July, 1931, the appellee brought suit against the appellant on the two notes under the Practice Act, and on August 26th of that year obtained judgments by default, which were the same day extended, in one case for $1,245, and in the other for $1,040. On May 22nd, 1937, the appellant filed a petition in the lower court to have the judgments stricken out on the ground, as he alleged, that he had not been summoned in the suits and had no knowledge, until shortly before the filing of the petition, that the suits had been brought or the judgments rendered, that he has a meritorious defense in that he was only twenty years of age when the notes sued on were signed and

did not attain his majority until May 23rd, 1931, and that he received no consideration for the notes or mortgages which he executed and which he "disaffirms and repudiates." After hearing testimony offered by the appellant to support, and by the appellee to refute, the allegations of the petition, the court below refused to strike out the judgments, and the question on this appeal is whether its action is sustainable on the evidence in the record.

In each of the suits a writ of subpoena was issued on July 3rd, 1931, directed to the sheriff of Baltimore City, commanding him to summon the appellant to appear before the Baltimore City court on the second Monday of the same month to answer an action at the suit of the appellee, and each writ was returned by the sheriff with an endorsement indicating that on July 8th the defendant had been duly summoned and served with a copy of the declaration and notice to plead. According to a memorandum on each writ, and the sheriff's testimony, the service of the writs was made by Deputy Sheriff Coyn, who was appointed in March, and died in September, 1931. The appellant testified that in the year 1931 he was a student at the medical school of the University of Maryland, and his home was with his parents in Baltimore; that during the summer recess of the school in that year he was employed in a drug store in Washington, D. C., from June until September, and did not once return to Baltimore in the months of July and August; that he was not summoned in the cases in which the judgments were entered and had no knowledge of their existence until some time in April, 1937, when he received a letter requesting payment; that he signed the notes at the request of his father in the office of Mr. Krelow, his father's attorney; that the properties mortgaged to secure the notes were not purchased with the appellant's money; that he was only twenty years of age when the notes and mortgages were executed and the appellee was so informed when the first of those transactions occurred. On cross-examination the appellant

said that he was told what he was signing on the occasions referred to, but he did not then know he had any property in his name, and first learned of that fact through his attorney in 1937; that he was subsequently an interne in the Sinai Hospital in Baltimore and saw and spoke to the appellee there on one or two occasions, but no reference was made by the appellee to the judgments now in controversy.

The appellant's father testified that his son worked in Washington during the summer months in 1931, and did not come home during that period, that the appellant's minority was mentioned in Mr. Krelow's office when the first note and mortgage were executed, but the latter said it made no difference because Mr. Davitz, the appellee, was lending the money to the witness and not to his son.

It was testified by a sister of the appellant that, so far as she knew, her brother did not come home from Washington during the summer months of 1931. The wife of the appellant, whom he married in 1936, testified that she was keeping company with him in the summer of 1931, and she visited him frequently in Washington, she being employed in Baltimore in the Sinai Hospital, but that the appellant did not come home during the summer vacation of that year.

The appellee stated in his testimony that he met the appellant several times at Sinai Hospital after the judgments were obtained; that the appellant was then an interne in the hospital; that on one of those occasions he asked the appellant "what about those judgments, and he said that he was not in a position to talk then about it— wait until he gets started and then they could talk"; that he would not have been so foolish as to make the loans if he had been told the appellant was not then twenty-one years old; that he made the loans to the appellant on his personal responsibility and on the security of the property described in the mortgages.

Mr. Krelow, who appears to have represented both the appellant's father and the appellee in the transactions

under inquiry, and whose daughter, also an attorney, later brought the suits which resulted in the judgments, was called by the court as a witness. He denied having any information that the appellant was under twenty-one years of age when the notes were signed. The checks for the loans, he said, were made payable to the appellant, who put them in his pocket, but what he did with them afterwards the witness could not say. It was further testified by Mr. Krelow that the reason the mortgages were not foreclosed, and the judgments on the notes were procured, was because the improvements on the mortgaged leasehold lots were in such bad condition as to be practically valueless; that before the notes matured the appellant's attention had been called to the unsatisfactory condition of the property; that the appellant and his father came to the office of the witness after suit was brought on the notes and "begged" him "not to go on with the suit and plaster the young man up with judgments." "Q. Was anything said about whether a summons had been served on him? A. He was served, because he knew he was being sued. * * *"

The official return of service of process upon the defendant is presumed to have been true, and he is charged with the burden of proof upon the issue raised by his allegation that the return was false. The mere denial of the defendant that the summons was served upon him is not sufficient to discharge that burden. *Parker v. Berryman,* 174 Md., 198 A. 708; *Adkins v. Selbyville Mfg. Co.,* 134 Md. 497, 107 A. 181; *Wilmer v. Picka,* 118 Md. 543, 85 A. 778; *Abell v. Simon,* 49 Md. 318; *Windwart v. Allen,* 13 Md. 196. If the defendant's denial is not supported by corroborative testimony or circumstances, or the evidence offered by him is refuted by opposing proof, the attempted impeachment of the official return must fail.

In this case the testimony of the appellant is strongly contradicted in important particulars, and the statements of his father, wife and sister as to his absence from Baltimore in the summer of 1931 are also inconclusive

as against the opposing evidence. It could reasonably be concluded by the court below that the testimony produced by the appellant was insufficient to discredit the sheriff's return, and we are in accord with such a conclusion.

As the appellant was concededly more than twenty-one years old when he was sued by the appellee, he could have raised the issue as to his infancy when he signed the notes in suit by interposing that defense in suitable and timely pleas. It is not certain from the evidence in the record that he was only twenty years old when the notes were executed, but, if that he assumed as a fact, his effort to disaffirm the liability involved in the judgments should not have been so long delayed. Not only was the opportunity to make such a defense in the suits neglected, but the ensuing judgments were unchallenged for nearly six years after they were rendered. It has been said by this court that "where the process has been regularly served upon the defendant, and he fails to appear and make his defence, and judgment is regularly entered against him, a strong case must be presented to justify the court in striking out the judgment after the lapse of the term," and that the defendant must act "with reasonable diligence in making the application." *Rust v. Lynch,* 54 Md. 636, 640; *Foxwell v. Foxwell,* 122 Md. 263, 272, 89 A. 494, 496.

In *Kemp v. Cook,* 18 Md. 130, a judgment against an eighteen-year-old defendant was confessed by his attorney. Six years after the defendant became twenty-one years of age he made application to the circuit court to strike out the judgment on the ground that it was entered during his infancy. On appeal from an order striking out the judgment this court said that in such a case relief will not be granted when the defendant "has knowingly acquiesced in the judgment complained of, or has been guilty of laches and unreasonable delay in seeking his remedy." It was further said by the court: "In this case, the appellee, according to his own showing, reached his majority in 1845, and although

aware of the existence of the judgment, and the mode in which it was rendered, made no objection to it and took no step to avoid it until 1851. This delay in our opinion amounted to laches which would deprive the appellee of the relief sought, even if there was no objection to the mode of proceeding * * *." The principle of that decision applies to the present case, and prevents a reversal on the ground of the appellant's infancy when the indebtedness represented by the judgments was originally contracted.

*Orders affirmed, with costs.*