## RALPH G. PLUMMER *v.* EARL ROSENTHAL
[No. 14, April Term, 1940.]

*Decided April 17th, 1940.*

The cause was argued before BOND, C. J., OFFUTT, PARKE, SLOAN, MITCHELL, SHEHAN, JOHNSON, and DELAPLAINE, JJ.

*Jerome Wasserman,* with whom was *Harry G. Selden* on the brief, for the appellant.

*Gilbert I. Friedel, H. Ross Black, Jr.,* and *Harry Kaplan,* submitting on brief, for the appellee.

JOHNSON, J., delivered the opinion of the Court.

This is an appeal by Ralph G. Plummer, one of the defendants below, from a decree of the Circuit Court No. 2, of Baltimore City, enjoining him from enforcing collection of a judgment obtained in the People's Court of Baltimore City against the appellee, Earl Rosenthal, and directing that the judgment be stricken from the record and the case reopened for trial upon its merits.

The judgment was rendered on June 10th, 1938, by default, in the sum of $93.49, for damages alleged sustained on October 5th, 1937, as a result of a collision between motor vehicles owned by appellant and appellee.

The bill of complaint was filed by appellee against appellant, the chief constable of the People's Court of Balti-

more City, and the Motor Vehicle Commissioner of the State of Maryland, after steps had been taken under Code, art. 56, sec. 187B, as added by Acts 1931, ch. 498, known as Financial Responsibility Act, to revoke appellee's license to operate a motor vehicle, as well as his motor vehicle registration.

In his bill of complaint, Rosenthal alleged that he had never received a summons to appear in the People's Court of Baltimore City to defend the suit, of which he had no knowledge until the time within which he could take an appeal had expired, and the first information he had of it was gained when he received a notice from the Motor Vehicle Commissioner that his permit to drive a motor vehicle and his motor vehicle registration were to be suspended because the judgment had not been satisfied. The decree appealed from was based upon a finding that Rosenthal had not in fact been summoned by the constable.

At the trial only three witnesses were produced, viz: the plaintiff, Rosenthal, Charles H. Bokemyer, a constable in the People's Court, and Irvin Rosenthal, plaintiff's brother.

Rosenthal, who is a law school graduate, testified that he had never received any summons or notice of any kind to defend the suit in the People's Court, and the first knowledge he had obtained about the suit was when he received a letter from Plummer's counsel, requesting settlement of the judgment, after the time for an appeal had elapsed. In that letter he was informed that his driver's license and his motor vehicle registration would be revoked unless the judgment was settled.

Bokemyer, the constable, was then produced by appellant and shown a writ of summons in which he had made a return of "Summoned in person." He identified the writ and stated that he had served it upon Rosenthal in front of a garage in the 800 block of East Lexington Street on May 18th, 1938; that he had not previously known Earl Rosenthal, but the party he summoned answered to Rosenthal's name; that he had heard nothing

further about the matter until two or three months before he was asked to testify in the case, and was then told he had not summoned the right party. The writ of summons and return of Bokemyer thereon were offered in evidence.

Earl Rosenthal was called on re-direct examination and testified that on May 18th, 1938, he was connected with a garage in the 800 block of East Lexington Street and the garage was being managed by his brother, Irvin, who resembled him very closely, so much so in fact that on many occasions their identities had been mistaken by people who had seen them three or four times; that never in his life had he seen the constable before the date of the hearing, although he had in the past known other constables and had been summoned by them. At this point the chancellor requested that the witness' brother be brought in and the constable remain pending his arrival. The brother was produced and testified that he was engaged in the garage business at 810 East Lexington Street on May 18th, 1938. Bokemyer was pointed out to him and he was asked whether he had on that date been served by him with any writ of summons for the People's Court and replied that he did not remember. He stated further that if he had received any summons he would have turned it over to his brother, and further that he did not recall ever having previously seen Constable Bokemyer. The constable was then recalled and interrogated by the chancellor as follows:

Q. "You saw the witness who was just on the stand, Irvin Rosenthal. Is he by any chance the man you served on May 18th? A. I will tell you how it happened. I went to his home and then to where he had his place at Wolfe and Orleans Street. Then I went up to the 800 block East Lexington Street. I asked the party if he was Earl and he said 'Yes.' I remember the case because he was hard to get. Q. Looking at the men are you able to say which was served? A. I am certain it was Earl, the one with the light suit on. This gentlemen right here."

(Indicating Irvin Rosenthal). "I know the party answered to the name of Earl when I summoned him."

After thus having Earl Rosenthal and his brother Irvin pointed out to him and identifying Irvin as the party upon whom he served the writ of summons, he again stated that the party upon whom he served the writ "accepted it" and read it in his presence. The chancellor then asked him: "As between the two men seated there on the bench, you don't have any independent recollection as to which, if either of them, was served, do you?" He replied, "No, but my memory is clear—he answered to the name of Earl and accepted it and read it while I was there." He was then asked to state according to his best recollection which one he served, if either, and answered, "It was one or the other. I know I served Earl. I am not going to swear about the fact. I served Earl, because he accepted it and read it."

Since an official return of service of process is presumed to be true, the burden is upon a defendant alleging non-service to show that such service was not in fact made, and the burden is not discharged by a mere denial that process was served. *Weisman v. Davitz,* 174 Md. 447, at page 451, 199 A. 476; *Parker v. Berryman,* 174 Md. 356, 198 A. 708; *Adkins v. Selbyville Mfg. Co.,* 134 Md. 497, 107 A. 181; *Wilmer v. Picka,* 118 Md. 543, 85 A. 778; *Abell v. Simon,* 49 Md. 318; *Windwart v. Allen,* 13 Md. 196.

But this case is not confined to Rosenthal's mere denial that he was served with process by the constable, inasmuch as the testimony of the latter was of such a nature as to create doubt as to whether he had summoned Earl Rosenthal, for he first identified Irvin Rosenthal as the one he had summoned, and when he realized his mistake he next said that he had summoned either Earl or his brother, Irvin. He himself being in doubt as to which of them he had summoned, how was the chancellor to conclude that he had in fact summoned Earl Rosenthal? This doubt upon the part of the constable was sufficient to overcome the *prima facie* presumption of the truth

of the return to the writ, and we are of the opinion that the chancellor was justified in so holding. *Adkins v. Selbyville Mfg. Co. supra; 2 Poe, Pl. & Pr.,* sec. 75.

Appellant urges that the recent decision of this Court in *Parker v. Berryman, supra,* should be controlling in the present case, but we are unable to adopt that view, because the facts and circumstances there relied on to overcome the presumption of the correctness in favor of the official return amounted only to a mere denial of service. In the present case, the facts are more closely analogous to those in *Piedmont-Mt. Airy Guano Co. v. Merritt,* 154 Md. 226, 140 A. 62, where the return of the sheriff was "summoned ambo," etc., but the deputy sheriff had never prior to the date of service seen one of the defendants, whom the writ showed he had summoned, after dark, in the vestibule of the house in which his co-defendant lived. At the hearing his identification of the defendant as the person summoned was not with absolute certainty, and the judgment was stricken out upon the ground that he had not in fact been summoned. This court held that the trial judge had the advantage of hearing and observing the witnesses and was, therefore, in a more favorable position than the appellate court to pass upon the force and weight of their testimony, and accordingly refused to disturb the finding.

Being of the opinion that the chancellor was correct in enjoining the collection of the judgment in question, and striking it from the record and re-opening the case for trial upon its merits, his decree to that effect from which the appeal is taken must be affirmed.

*Decree affirmed, with costs.*