## ASHE *v.* SPEARS ET UX.

[No. 108, September Term, 1971.]

*Decided December 9, 1971.*

The cause was argued before HAMMOND, C. J., and BARNES, MCWILLIAMS, SINGLEY, SMITH and DIGGES, JJ.

*Carlyle J. Lancaster,* with whom were *Richard B. Bland* and *Lancaster, Bland, Eisele & Herring* on the brief, for appellant.

*James Ignatius Keane,* with whom were *Ronald Willoner* and *DePaul & Willoner* on the brief, for appellees.

SINGLEY, J., delivered the opinion of the Court.

In March of 1966, the appellant Ashe purchased for $1,500 at a tax sale less than an acre of land located near a shopping center at Marlow Heights in Prince George's County. The property, owned by Louis T. Spears and his then wife, Marie A. Spears (now Marie A. Dodson), had been sold for non-payment of taxes in the amount of $261.28. In November 1967, Ashe instituted a proceeding in the Circuit Court for Prince George's County to foreclose Mr. and Mrs. Spears' right of redemption. This was brought to a conclusion in April of 1968 by a decree vesting title in Ashe.

In August of 1969, Spears and his wife learned—they said for the first time—of the tax sale when a request was made of their real estate agent to remove a "For Sale" sign from the property. In September they started proceedings to vacate the 1968 decree. From a supplemental decree vacating the earlier one, and voiding the county treasurer's tax sale deed upon payment of costs of redemption by Spears and his former wife, Ashe has appealed.

The core of the problem is whether Mr. and Mrs. Spears may successfully impeach the validity of service of process upon them. If they can, the decree of the lower court must be affirmed, and they will be able to redeem the property. If they cannot, the decree must be reversed, and title will remain vested in Ashe.

Until early February, 1967, Mr. and Mrs. Spears lived at 9508 Ardmore Road, Route 1, Landover, Maryland. At that time, because of domestic difficulties, Mr. Spears, who trained and raced horses, moved to Charles Town, West Virginia, and said that in November and December of 1967, he was at a track at Waterford Park, near Chester, West Virginia. Mrs. Spears stayed on in the house until 3 November 1967, when she moved to an apartment at Glendale, Maryland, but her son, Ralph T. Spears, continued to occupy the Ardmore Road house until about June of 1968.

On 6 November 1967, Ashe filed his action to foreclose Mr. and Mrs. Spears' right of redemption in the property which he had purchased at the tax sale. On the same day, a subpoena was issued, directed to Mr. and Mrs. Spears at "Route 1, Ardmore Road, Landover, Md." and delivered to the sheriff for service. On 7 December, the subpoena was returned with the notation "non est Louis and Marie Spears unable to locate."

On 11 December 1967, the subpoena was reissued and was returned on 22 December with the notation:

"Summoned Louis T. Spears and Marie A. Spears by personal delivery of and leaving a

copy of subpoena and Bill of Complaint with said Louis T. Spears and Marie A. Spears at Hyattsville, Md. on this 21 day of December 1967."

On 28 December, the court passed an order of publication, which was published in a local newspaper for four successive weeks, commencing 4 January 1968.

Forrest A. McDaniel, Deputy Sheriff of Prince George's County, called as a witness by Mr. and Mrs. Spears, testified that in December 1967, he was assigned to the County Service Building in Hyattsville. He said, after examining the first subpoena dated 6 November, which was directed to "Louis T. Spears and Marie A. Spears, his wife, Route 1, Ardmore Road, Landover, Md.," "From looking at the address, it would have been more or less common procedure to non-est a paper issued with the address that was insufficient like this."

After being shown the subpoena which was reissued on 11 December, Sheriff McDaniel admitted that he had been unable to recognize Mr. Spears and had no recollection of having served the subpoena on 21 December. He explained that he was serving, at that time, between 50 and 60 papers a month, all to people who came to his office. He was asked for an explanation of the return which he had endorsed on the second subpoena:

"(The Court) : And when you say 'Personal delivery of and leaving a copy of the subpoena, bill of complaint with Louis T. Spears and Marie A. Spears,' what do you mean by that?
"(The witness) : This would mean to me that someone who identified themselves to me as Mr. and Mrs. Spears, they came to me and identified themselves as this person and I personally served them with the copies of the bill of complaint and subpoena."

Spears testified that he had lived at Ardmore Road for 15 years prior to leaving in 1967; that on 21 Decem-

ber 1967, he was at Waterford Park, where no attempt was made to serve him. Three photographs were offered in evidence showing Spears at Waterford Park on 29 November, 15 December, and 29 December, as well as a statement of account, issued by the race track, which showed that Spears had raced his horses with considerable regularity from 29 November to 16 December and from 26 December until the end of the month. Spears explained the inactivity which began 17 December and continued through 25 December by saying that the track had been closed for a week or more at Christmas. Spears was quite positive that he stayed at Waterford Park during this period, taking care of his horses.

Also admitted in evidence were the depositions of Robert F. Arnette, a trainer who had stabled his horses next to Spears' during the 1967 fall meet at Waterford Park, and Kenneth A. Clinton, a groom who had worked there for Arnette, and occasionally, for Spears. The thrust of their testimony was that Spears, who raced only three or four horses, simply had to be at the track every day to water, feed and exercise his horses, because the economics of the situation made the employment of other help unfeasible. It was only by this reasoning that they were able to put Spears at the track all through December, since neither could say that he was there on 21 December.

In the course of his deposition, Arnette put it this way:

"Q   And you saw him every day in the month of December?

"A   I could reasonably say yes because I can't remember no day that he wasn't there.

"Q   And you would have noticed that?

"A   Man, anybody would, because when a horse's water bucket gets empty they will rattle it, and it's most aggravating. And your neighbors talk about you maliciously if you neglect your horses, is what I mean."

Mrs. Dodson, formerly Mrs. Spears, testified that on 21 December 1967, she was at her place of employment in Cheverly, Maryland; that she was not served with process, and did not go to the County Service Building in Hyattsville to receive any papers.

Ralph T. Spears, Mr. Spears' son, who continued to live at the Ardmore Road house after his father and mother left, testified that he did not see his father at any time during the month of December 1967, and that no papers had been served at the house.

Ashe, the tax sale purchaser, testified that he had talked to Mr. Spears at Ardmore Road in the summer of 1967, and later had made a telephone call to Mrs. Spears at the place where she was employed. He said that he had told both of them that he had bought the property at a tax sale and had asked whether they intended to redeem it. Each answered his question affirmatively, saying that they had been through such a situation before with the same property. Ashe said he called Mrs. Spears again on two other occasions, and each time she assured him that the property would be redeemed. Spears said that he was in Vermont when Ashe was supposed to have spoken to him at Ardmore Road. Mrs. Spears denied having received any telephone calls from Ashe, or having called his lawyer about the redemption.

This case does not, as did the recent cases of *Walter E. Heller & Co. v. Kocher,* 262 Md. 471, 278 A. 2d 301 (1971) and *Jannenga v. Johnson,* 243 Md. 1, 220 A. 2d 89 (1966) turn on the question whether a plaintiff in a redemption foreclosure case has made a good faith effort to put the former owner on notice of the proceeding pending against the property. It involves the more difficult question whether the official return of service of process may be impeached.

The rule of our cases is that the return of service of process is presumed to be true and accurate and a mere denial by a defendant, unsupported by corroborative evidence or circumstances, is not enough to impeach the re-

turn of the official process server, *McGinnis v. Rogers,* 262 Md. 710, 737, 279 A. 2d 459 (1971) ; *Kaylor v. Wilson,* 260 Md. 707, 713, 273 A. 2d 185 (1971) ; *Weinreich Admx. v. Walker,* 236 Md. 290, 296, 203 A. 2d 854 (1964) ; *Little v. Miller,* 220 Md. 309, 315-16, 153 A. 2d 271 (1959) ; *Parker v. Berryman,* 174 Md. 356, 359, 198 A. 708 (1938) ; *Weisman v. Davitz,* 174 Md. 447, 451, 199 A. 476 (1938) ; *Windwart v. Allen,* 13 Md. 196, 200 (1859). This is because the affirmative testimony of the official process server acting in the regular routine of duty without a motive to misrepresent must be preferred to the negative evidence of one claiming not to have been served, either for reasons of public policy or as a matter of probability, *Sarlouis v. Firemen's Insurance Co.,* 45 Md. 241, 244 (1876).

The rule has a corollary, however: if the defendant's denial is supported by corroborative evidence by independent, disinterested witnesses, the denial will stand unless the corroborative evidence is refuted. Thus, there was a successful challenge of service in *Harvey v. Slacum,* 181 Md. 206, 29 A. 2d 276 (1942), where a husband and wife denied they had been summoned, and the sheriff did not know whether he had served the husband or the husband's son, could not identify the husband in the courtroom and could not remember the wife or say that he had summoned her. The same result was reached in *Plummer v. Rosenthal,* 178 Md. 149, 12 A. 2d 530 (1940) where Rosenthal denied service and the sheriff was uncertain whether he had served Rosenthal or Rosenthal's brother. Return of service was similarly impeached in *Piedmont-Mt. Airy Guano Co. v. Merritt,* 154 Md. 226, 140 A. 62 (1928) where the defendant's father denied service and there was corroborating testimony that the father was not at his son's home at the time service was supposed to have been made, and the sheriff was highly uncertain in making identification.

But the burden of proof is on the person denying that he was served, and this burden can only be discharged

by adducing conclusive and unrefuted testimony or circumstances, *Weisman v. Davitz, supra,* 174 Md. at 451, which must be, in the language of *Sarlouis v. Firemen's Insurance Co., supra,* 45 Md. at 245, "clear and convincing." It is apparent to us that the testimony on which Spears relies is too inconclusive to meet this test.

Assuming the truth of every word that Clinton and Arnette said, they could not explicitly and convincingly put Spears at Waterford Park on 21 December. They both relied on a course of conduct, yet neither was able to remember who was on the other side of their stall, and both admitted that if there were no racing, Spears' horses could be left in another's care for a day or two.

Ralph Spears' failure to see his father during December is not conclusive proof that his father was or was not in Prince George's County or Waterford Park.

The sheriff gave no testimony which would explicitly support the denial of service; on the contrary, he testified that a couple who identified themselves as Mr. and Mrs. Spears came to his office in Hyattsville and were served by him, and that his signature on the return showed that this is what happened.

Refutation of Mrs. Spears' denial is found in Ashe's testimony that he had called Mrs. Spears' place of employment on three occasions, had asked for Mrs. Spears, and had talked to a woman who said she was Mrs. Spears, and in the testimony of Ashe's lawyer who said that he had received a call from a person who identified herself as Mrs. Spears.

Under our view of the case, Mr. and Mrs. Spears simply did not meet the burden of proof required if service of process were to be impeached. Having reached this conclusion, we need not consider whether there was valid service by publication, as Ashe contended.

*Decree reversed, costs to be paid by appellees.*