**KOEHNE v. PRICE.**

No. 826.

Municipal Court of Appeals for the
District of Columbia.

Argued Aug. 3, 1949.

Decided Oct. 13, 1949.
Rehearing Denied Nov. 8, 1949.

Ira Chase Koehne, Washington, D. C., pro se.

Edmund L. Browning, Jr., Washington, D. C., for appellee.

Before HOOD and CLAGETT, Associate Judges, and MYERS, Associate Judge, The Municipal Court for the District of Columbia, sitting by designation.[1]

CLAGETT, Associate Judge.

This appeal involves the important question of the faith and credit to be given in the District of Columbia courts to a judgment rendered by a justice of the peace of Prince George's County, Maryland, recorded in the circuit court of that county, and exemplified as so recorded by a triple certificate of the judge and clerk of the circuit court in accordance with the federal statute enacted pursuant to Section 1, Article IV of the federal Constitution.

In the present suit, brought in the Municipal Court, there was admitted in evidence over objection of defendant a copy of the docket entries by the justice of the peace as exemplified from the copy on file in the circuit court and also another copy signed personally by the justice of the peace and bearing his personal seal. (The court itself has no seal.) The docket entries so proved are set out in the margin.[2] Such docket entries showed that plaintiff had on October 17, 1938, recovered a judgment against defendant in an action of debt and that the summons in the case had been issued to a constable and returned as having been served personally.

Plaintiff-appellee, in addition to introducing the two copies of the docket entries, testified at the trial below that he had appeared in person at the trial before the justice of the peace but defendant did not appear; that he had established his case by proof; that the justice personally filled out, signed and sealed, and delivered to plaintiff the transcript of the docket received in evidence. Plaintiff also testified

1. Code 1940, Supp. VI, 11—771.

2. "Bobbs Transfer Co. tr/as by Robert L. Price,
   Plaintiff

   vs.

   Ira Chase Koehue,* Laurel, Md.
   Defendant.

Docket No. 748-64. Suit No. 748.

Before George S. Phillips Justice of the Peace For The State Of Maryland In And For Prince Georges County, Action Debt $119.00, · Summons issued September 13th, 1938. Directed to A. W. Hepburn, Constable, or any officer. Returnable September 20th, 1938. Returned Summoned (Personal).

Continued to September 27th, 1938 at 8:00 o'clock P. M.
    "       "  October 10th, 1938   "    "   "   . "  "
    "       "       "   17th   "    "    "   "   "  "    Prince Georges County, Maryland October 17th, 1938. Plaintiff appeared October 17th, 1938. Non appearance Defendant, October 17th, 1938 trial ex parte, Oct. 17th, 1938. Judgment in favor of Plaintiff for the sum of One Hundred and Nineteen ($119.00) Dollars and no Cents, Debt, with interest from date until paid, and One ($1.00) Dollars and Eighty-five (.85) Cents costs $1.85 cost paid by Plaintiff.
WITNESS my hand and seal George S. Phillips. J. P.    (SEAL)
True Copy from my Docket George S. Phillips. J. P.    (SEAL)
                                                21st Dist."

To the above was attached a certificate of the clerk of the circuit court that at the time the judgment was entered before George S. Phillips the latter was a justice of the peace in and for Prince George's County, Maryland. Then followed the usual triple certificate signed and sealed by the clerk and by Judge Charles C. Marbury of the Circuit Court, a court of record.

* The typewritten copy misspells the name thus: "Koehue."

that the judgment had not been paid. Defendant then moved for a directed finding upon his pleas of (1) nul tiel record and (2) that the purported judgment was not a lawful and enforceable judgment in Maryland and suit thereon was barred here. This motion, as well as a motion to strike plaintiff's exhibits, was denied. Defendant then answered, again pleading nul tiel record, and also attacking the purported judgment on the ground of lack of jurisdiction of his person in the justice court; that the action was barred by the District of Columbia statute of limitations; that such a judgment of another state similarly exemplified would not support an action in Maryland, and that the judgment could not be recovered upon in Maryland. It was stipulated that all applicable Maryland statutes be considered as offered in evidence and that no execution had ever been issued in Maryland on the judgment.

Defendant testified that he had not heard of the judgment until after he had been served with a Municipal Court summons in the present action. He also testified that for many years his voting domicile had been in Indiana but that at the time of the alleged service of process and judgment he had resided on a farm near Laurel, Prince George's County, Maryland; that about September 17, 1938, a man called at his Laurel residence and told him that the "justice of the peace, down the road, wants to see you"; that he had asked such man if he was a constable or any person authorized to serve a summons and the man replied, "No"; that he had not seen the man before nor since; that he had told the man he had a telephone listed in his name and that the justice of the peace could use it conveniently in talking with him; that he never telephoned the justice; that there had been a dispute between plaintiff and himself about a bill for moving plaintiff's goods to Laurel from Silver Spring, Maryland, but that plaintiff had never told him or indicated that he had a judgment against him.

Plaintiff testified in rebuttal that he had rendered moving services for defendant and had made several demands for payment but had never been paid. He also testified that none of the continuances of the case before the justice of the peace had been at his request but that each one had been preceded by a telephone call to the justice. (On objection of defendant plaintiff was prevented from testifying what the justice of the peace had told him about these telephone calls.) He further testified that he had seen defendant after the judgment had been obtained and informed defendant of the judgment and that defendant had promised to pay the debt as soon as he could. Plaintiff also testified that on a subsequent occasion the defendant had promised to pay as soon as he could collect some fees he was expecting.

On the issue of whether personal service in the justice of the peace action had actually been made upon defendant[3] the trial court included a note in its statement of proceedings and evidence on appeal as follows:

"In connection with the issue concerning service of summons referred to in numbered paragraph (2) of the above quoted memorandum, the Court considered, inter alia, the legal principles applicable to the instant case concerning the inferences and presumptions arising from the recitals contained in a certified transcript of a foreign judgment and concerning also the service of process in the State of Maryland (See Adkins v. Selbyville Mfg. Co. [134 Md. 497], 107 A. 181); and further, in connection with defendant's testimony as to his conversation about September 17, 1938, with the man who told him the justice of the peace wanted to see him, etc., the Court concluded, as matter of fact, that defendant's memory, due to his age[4] and the lapse

---

3. No question has been raised as to the other jurisdictional requirement, namely, jurisdiction of the subject matter. The transcript of proceedings shows that the action was one in debt, the testimony was to the same effect, and defendant has conceded and the Maryland statute pro-

vides that the action was within the jurisdiction of justice of the peace, both as to subject matter and amount.

4. The record indicates that defendant was in his 77th year at the time of the Municipal Court trial.

of time since the Maryland case, was not accurate, and that his recital of said conversation was not complete, and that service actually had been made upon him in the manner permitted by the Maryland law, and that his testimony did not overcome the presumption of service arising from the recitals contained in the certified transcript of the Maryland proceedings."

Defendant's assignments of errors are embraced in objections to rulings by the trial court on various preliminary motions and thus are somewhat difficult to follow, but, reduced to their essentials, the following questions appear to be presented by the appeal: (1) Did the District of Columbia statute of limitations bar the present suit on the Maryland judgment? (2) Is a judgment of a Maryland justice of the peace, if obtained in accordance with Maryland law and properly proved, enforceable in the District of Columbia? (3) What weight if any is to be given to an entry in the docket of a Maryland justice of the peace showing personal service of process on defendant?

Underlying a discussion of these issues is defendant's reliance upon the principle that if the present suit had been brought in Maryland upon a judgment of a justice of the peace obtained in another state and the judgment was sought to be proved as this judgment was proved a judgment could not have been obtained in Maryland. In support of this position plaintiff relies upon certain Maryland decisions such as Coane v. Girard Trust Co., 182 Md. 577, 35 A.2d 449, and Picking v. Local Loan Co., 185 Md. 253, 44 A.2d 462, 162 A.L.R. 678, which in turn depend upon Maryland laws of evidence. This position shows a misconception of the meaning of the full faith and credit provision of the federal Constitution. Full faith and credit depends not upon the faith and credit which Maryland gives to the judgments of other states but rather upon the effectiveness of Maryland's own judgments in that state. Questions of evidence and all other questions of procedure are to be determined by the law of the forum which in this case, of course, is the District of Columbia.

1. We are clear that the trial court was correct in ruling that the present suit, which was commenced October 22, 1943, was not barred by the local statute of limitations, Code 1940, 12—203, which provides that an action upon a judgment rendered in another state shall be barred here if by the laws of such other state "such action would there be barred and the judgment or decree be incapable of being otherwise enforced there." As already indicated, the judgment sued upon was entered October 17, 1938. It was docketed May 6, 1943, in the Prince George's County Circuit Court in accordance with Maryland law. Article 26, section 21, Flack's Annotated Code of Maryland, provides that on all judgments of justices of the peace recorded in the clerk's office of any court of law an execution or attachment may issue out of such court or by the clerk thereof, at any time within 12 years from the date of the judgment or decree, or the said judgment or decree may be otherwise proceeded with within 12 years from its date, "provided, that at any time before the expiration of twelve years from the date of any such judgment or decree, * * * the plaintiff shall have the right to have a writ of scire facias to renew or revive the same." Under Article 52, section 59, of the Maryland Code, judgments rendered by justices of the peace may be revived at any time within 12 years of their date by scire facias. In support of his position on this point defendant relies upon old Maryland cases such as Weikel v. Cate, 1882, 58 Md. 105, construing old Maryland law to the effect that executions were required to be issued on judgments within three years after their date, but such cases no longer apply because of the statutory 12-year provision in the Maryland Code. In cases decided by the Maryland courts since the change in the statute, it has been held that justice of the peace judgments in Maryland recorded in the appropriate circuit court or other court of record may be enforced by execution or revived by scire facias at any time within 12 years of the date of the judgment. See Ruth v. Durendo, 1934, 166 Md. 83, 170 A. 582. In the present case the justice of the peace judgment was

recorded in the Prince George's County Circuit Court approximately five years after the date of the judgment and the suit in the District of Columbia was brought well within the 12 years allowed for execution in Maryland. It follows that the action was not barred by the local statute applicable to suits on foreign judgments.[5]

2. Defendant contends that since the judgment sued on was rendered by an inferior tribunal of limited jurisdiction which is not a court of record such judgment is not enforceable in the District of Columbia by separate suit thereon. The trial court in its memorandum opinion holding to the contrary cited Hade v. Brotherton, 11 Fed.Cas. No. 5,892, 3 Cranch C.C. 594, in which the circuit court of the District of Columbia sustained a suit here upon a judgment of a Pennsylvania justice of the peace. Our attention has not been called to any local appellate decisions on the subject, nor have we found any.

We believe the preponderant and better reasoned view is that valid judgments of justices of the peace of other states are enforceable in the District of Columbia provided they are properly proved. Numerous decisions in other states are to that effect.[6]

The doctrine announced by some courts that justice of the peace judgments of one state are not enforceable in another is based on the theory that since the proceedings of such tribunals are not records in a technical sense they can not be proved under the federal statute. Leading authorities on the subject, however, do not agree with this doctrine. Thus Black in his treatise on Judgments, 2nd Ed. § 937, characterizes the doctrine as unsound. He points out that the federal statute applies equally to "records and judicial proceedings," and he believes that the latter term was used to cover such courts which do not have "records." He also believes that the lack

of a seal may be explained by certification and mentions that the statute itself provides that the seal of the court is to be annexed "if a seal exists" and thus that the statute itself contemplates tribunals which do not have a seal. Thus Black urges that the act of Congress was specifically intended to cover judgments of inferior courts and magistrates as well as courts of record. Freeman on Judgments, 5th Edition, Vol. 3, § 1407, cites cases holding that the constitutional provision is self-executing and that the failure of Congress to provide a mode of authenticating the judgments of courts not of record does not deprive them of their character of "judicial proceedings" nor warrant withholding from them in any other state the full faith and credit attaching to them in the state wherein they were rendered. Freeman adds that the "undoubted tendency of the more recent cases is to place the judgments of justices of the peace and other inferior courts on the same footing with other judgments of a sister state so far as their conclusiveness is concerned, though maintaining the same distinction, as to the presumptions accorded them, which is generally observed as to domestic as well as foreign judgments of courts of record and those not of record."

3. The final and, in our opinion, decisive question for our decision is the weight, if any, to be given to the docket entries of the justice of the peace as proved in the present suit, particularly the docket entry showing personal service on defendant.

The docket entries were made in accordance with Maryland statutes and furnished the basis for enforcement of the judgment anywhere in Maryland. Article 52, section 19, Flack's Annotated Code of Maryland, provides that each justice of the peace shall keep a docket and therein record entries of his proceedings and shall furnish the plaintiff and defendant, respectively, with a copy of any judgment given by him

5. McKay v. Bradley, 26 App.D.C. 449.
6. Banister v. Campbell, 138 Cal. 455, 71 P. 504, rehearing denied 71 P. 703; Morrison Mfg. Co. v. Rimerman, 127 Iowa 719, 104 N.W. 279; Tomlin v. Woods, 125 Iowa 367, 101 N.W. 135; Case v. Huey, 26 Kan. 553; Roberts v. Hinkle, 43 S.W. 233, 19 Ky.Law Rep. 1283; Winham v. Kline, 77 Mo.App. 36; Rowley v. Carron, 117 Pa. 52, 11 A. 435; Lawrence v. Gaultney, S.C.1839, Cheves 7; J.S. Menken Co. v. Brinkley, 94 Tenn. 721, 31 S.W. 92; Carpenter v. Pier, 30 Vt. 81, 73 Am.Dec. 288.

whenever required. Penalties for failing to keep such docket are provided in the statute. Article 52, section 27, provides that the process to be issued by justices of the peace in civil cases shall be a summons, wherein shall be stated briefly the purpose for which the party is summoned, and shall be made returnable before the justice issuing the same or before some other justice on a day to be stated in said summons, not exceeding 40 days from the time of issuing the same. Article 52, section 28, provides that if the summons is returned "summoned" and the defendant fails to appear on the return day, then the justice shall fix a day of trial, not less than 6 nor more than 14 days from the return day, and on such day proceed to try such case ex parte. Article 52, section 32, provides that if either party on the day of trial shall ask a postponement the justice shall postpone the trial to another day not exceeding 14 days if the justice is satisfied by the oath of the party or otherwise that a postponement is necessary to a fair trial of the case. Article 52, section 44, provides that judgments rendered by justices of the peace are made liens upon real estate by recording a copy of the judgment "under the hand and seal of the justice" by whom it is rendered with the clerk of the appropriate circuit court. Article 52, section 77, provides: "Any justice may issue execution or any other process on a short copy of a judgment rendered by a justice of any other county or city in this State; provided said short copy be certified by the clerk of the circuit court for the county where the judgment was rendered under the seal of his office * * *." Article 20, sections 4–7, of the Maryland Code, provides that constables shall be bonded, and that they shall be subject to fines for failure to serve process or make return thereof. It has been held in Maryland that there is sufficient service of process if the summons is read by the constable in the presence of the defendant.[7]

The federal constitutional provision that full faith and credit shall be given in each state to the public acts, records and judicial proceedings in every other state does not itself specify the manner in which records of judicial proceedings shall be proved but leaves such detail to Congress. Congress has enacted separate statutes on the subject for the nation and for the District of Columbia. The constitutional provision, the federal statute, and the local statute appear in the margin.[8]

We have no doubt that the copy of the docket entries made by the justice of the peace was admissible in evidence in the present case. Entirely aside from the triple certificate by the clerk and judge of the circuit court, the other copy, signed and sealed by the justice in the presence of plaintiff, was delivered to plaintiff by the

7. Adkins v. Selbyville Mfg. Co., 134 Md. 497, 107 A. 181.
8. Section 1, Article IV of the Constitution provides: "Full Faith and Credit shall be given in each State to the public Acts, Records, and Judicial Proceedings of every other State. And the Congress may by general Laws prescribe the Manner in which such Acts, Records and Proceedings shall be proved, and the Effect thereof."

28 U.S.C.A. § 687 [now Revised § 1738] provides in its applicable part:

"The records and judicial proceedings of the courts of any State or Territory, or of any such country, shall be proved or admitted in any other court within the United States, by the attestation of the clerk, and the seal of the court annexed, if there be a seal, together with a certificate of the judge, chief justice, or presiding magistrate, that the said attestation is in due form. And the said records and judicial proceedings, so authenticated, shall have such faith and credit given to them in every court within the United States as they have by law or usage in the courts of the State from which they are taken."

D.C.Code 1940, 14—401, provides: "An exemplification of the record under the hand of the keeper of the same, and the seal of the court or office where such record may be made, shall be good and sufficient evidence to prove any record made or entered in any of the states or territories of the United States; and the certificate of the party purporting to be the keeper of such record, accompanied by such seal, shall be prima facie evidence of that fact."

justice in accordance with the Maryland statute, Article 52, section 19, Flack's Annotated Code of Maryland, and thus constituted an official copy of such entries.[9]

■■ While the modern view is that a properly authenticated judgment of a justice of the peace when sued upon in another state is conclusive as to the merits of the case,[10] it is equally true that questions affecting jurisdiction are open to inquiry.[11] Where no issue is raised regarding the jurisdiction of the justice of the peace rendering the judgment, a properly certified transcript of the docket entries showing service of process upon the defendant and jurisdiction of the subject matter is sufficient to support a judgment in another state.[12]

■ As to the weight, if any, to be given the docket entries of the justice of the peace when service of process is denied, as it was here, authorities differ, but the better rule is that the recital of jurisdictional facts in the proceedings of such inferior courts is prima facie evidence of jurisdiction, but there is no conclusive presumption of the truth of such recitals; and they may be contradicted by extrinsic evidence.[13]

In the present case the trial court, in holding that service upon defendant had been made, relied upon "the presumption of service arising from the recitals contained in the transcript of the Maryland proceedings."

It is unimportant whether the docket entries showing service of process are considered to have made out a prima facie

case of such service or whether they are deemed to have given rise to a presumption that service was made. Wigmore treats the problem, regardless of terminology, as one involving "the risk of non-persuasion."[14] Discussing such presumptions of fact, the United States Court of Appeals for the District of Columbia in Stone v. Stone, 78 U.S.App.D.C. 5, 7, 136 F.2d 761, 763, quoted with approval the following additional statement by Wigmore:

"'They are, in truth but mere arguments,' and 'depend upon their own natural force and efficacy in generating belief or conviction in the mind.' They have no significance so far as affects the duty of one or the other party to produce evidence, because there is no rule of law attached to them, and the jury may give to them whatever force or weight it thinks best,—just as it may to other evidence. There may be a preliminary question whether the evidence is relevant and admissible as having any probative value at all; but, once it is admitted, the probative strength of the evidence is for the jury to consider."

■ It has been said that a presumption of this sort continues until there is credible evidence to the contrary and ceases when there is uncontradicted evidence opposing the presumption.[15] It has been held, however, that the latter part of the rule just stated is inapposite if the witness has an interest in the outcome of the case,[16] and also that if the evidence opposing the presumption is contradictory or reasonably subject to contradictory interpretations the question becomes one for the trier of the

9. 28 U.S.C.A. § 1732.
10. 2 Black, Judgments, 2d Ed. § 935; Treharne v. Matson, 46 Ind.App. 705, 93 N.E. 553; Ault v. Zehering, 38 Ind. 429; Albright v. Mickey, 99 Ark. 147, 137 S.W. 568.
11. Thompson v. Whitman, 18 Wall. 457, 85 U.S. 457, 21 L.Ed. 897; Miller v. Brown, 170 Ark. 949, 281 S.W. 904.
12. Hade v. Brotherton, 11 Fed.Cas.No. 5,892, 3 Cranch C.C. 594, supra; Campbell v. Wallace, 46 Mich. 320, 9 N.W. 432; Willoughby v. Dewey, 54 Ill. 266.
13. 2 Jones, Evidence, 4th Ed., § 613; Albie v. Jones, 82 Ark. 414, 102 S.W. 222, 12 Ann.Cas. 433; Jones v. Terry, 43

Ark. 230; Christensen v. Esbeck, 167 Iowa 130, 149 N.W. 76; In re Baum, 61 Kan. 117, 58 P. 958; Evans v. Cleary, 125 Pa. 204, 17 A. 440, 11 Am.St.Rep. 886; Squires v. Detwiler, 45 Colo. 366, 101 P. 342; 1 Freeman, Judgments, 5th Ed., § 398.
14. 9 Wigmore, Evidence, 3rd Ed., § 2485, et seq.
15. Rosenberg v. Murray, 73 App.D.C. 67, 116 F.2d 552.
16. Broadcast Music v. Havana Madrid Restaurant Corp., 2 Cir., 175 F.2d 77; see also the dissent of Associate Justice Rutledge in Rosenberg v. Murray, supra.

facts.[17] As was stated in Falstaff Brewing Corporation v. Thompson, 8 Cir., 101 F.2d 301, 304, "It is only when uncontradicted proof clearly and distinctly establishes a fact so that reasonable minds can draw but one inference, that the presumption disappears or is destroyed." It is perhaps worthy of some note in passing that many state cases hold that a presumption is never overcome by testimony, even though uncontradicted, if the trial court disbelieves the testimony.[18]

Here the trial court held specifically that, having in mind defendant's advanced age, it did not accept his testimony that he had not been served. There were other circumstances and other testimony which the trial court was entitled to consider. For instance, plaintiff testified that there were continuances in the case which were not taken at his request and which followed telephone calls to the justice of the peace. An inference could, therefore, be drawn that such continuances were taken at the request of the defendant. Furthermore, plaintiff testified that after the judgment had been obtained he informed defendant of the judgment and the latter promised to pay the debt. Defendant on the other hand testified categorically that plaintiff had never told him or indicated that he had a judgment against him. If the trial court believed plaintiff's testimony on this point, it was entitled to reject other parts of the testimony of defendant.

 Taking all of these elements into consideration, we have concluded that the question for decision by the trial court was one of fact and that it was justified in finding as it did that defendant's testimony was not entirely accurate in respect to the service upon him and that in fact he was actually served with process and hence that the justice of the peace had jurisdiction and his judgment should be enforced. We conclude, in other words, that the trial court had the right to weigh the presumption or prima facie case against the testimony of defendant, an interested party, and in its discretion to conclude that the presumption outweighed the evidentiary value of defendant's testimony.

Affirmed.

---

17. Rice v. Simmons, D.C.Mun.App., 53 A.2d 587; see also Hiscox v. Jackson, 75 U.S.App.D.C. 293, 127 F.2d 160.

18. Lane v. Whitaker, 50 Cal.App.2d 327, 123 P.2d 53; People v. One 1937 Buick Coupe, Cal.App., 201 P.2d 402; Meyers v. Brown-Forman Distillery Co., 289 Ky. 185, 158 S.W.2d 407; Southland Life Ins. Co. v. Greenwade, Tex.Civ.App., 143 S.W.2d 648, affirmed 138 Tex. 450, 159 S.W.2d 854.