**Linda DAVIS, et al., Appellants,**

v.

**Andrew T. ALTMANN, Executor of the Estate of Ralzemond D. Parker, Appellee.**

**No. 83–356.**

District of Columbia Court of Appeals.

Argued April 4, 1985.

Decided May 24, 1985.

Gary Primavera, Washington, D.C., for appellants.

Ellen S. Huvelle, Washington, D.C., with whom Peter J. Kahn, Washington, D.C., was on brief for appellee.

Before NEWMAN and ROGERS, Associate Judges, and GALLAGHER, Associate Judge, Retired.

NEWMAN, Associate Judge:

As a result of a jury verdict, Linda and Nathaniel Davis are required to return approximately $121,000 to Andrew T. Altmann, Executor. This money was transferred to the Davises from Parker's accounts during the last few months of his life while the Davises were employed by Parker to care for his needs. The Davises' primary contention is that the court erred by instructing on presumptions, and by instructing that the presumptions must be rebutted by clear and convincing evidence, thereby

incorrectly shifting the burden of proof on undue influence to them.[1] We affirm.

Linda Davis was hired in May 1978 to care for Parker, who was 96 years old, and his mentally ill adult daughter. Parker suffered from arteriosclerosis, senility and gangrene which resulted in dizziness, loss of memory, and difficulty in his being able to see, hear, speak or write. He was confined to the bed most of the time; he was hospitalized seven times during his last 18 months of life. Nathaniel Davis was hired in March 1979 to assist his wife and to maintain the house. By February 1980, Parker's health declined to the point that he needed around-the-clock supervision. The Davises moved into the Parker residence to provide this care. In return, they each received a weekly salary of $1,120 after taxes.

In early February 1980, Parker was hospitalized, suffering from senility. He was discharged on February 6, 1980—there being no further treatment he could be given. Between his release on February 6, and his death on May 1, 1980, all of Parker's AT & T stock was sold for $156,707; $10,000 worth of stock from his Bache security account also was sold. Of this money, $85,000 was kept by the Davises; they also took five municipal bonds valued at $1,000 each. This money was in addition to their combined weekly salaries of $2,240.

Parker established two joint bank accounts with Linda Davis in May 1979. This was done shortly after discussing with one of his sons and his attorney his need for help with his financial affairs. It was done as a convenience and was not intended to vest any interest in the accounts at any time in the Davises. A few days after Parker's death, Linda Davis withdrew the remaining $34,782 from one account and shortly thereafter withdrew $1,780 from the second account, thereby virtually depleting the accounts. It is conceded that the Davises never deposited any of their funds into either account. Altmann made formal demand for return of the money and bonds; the Davises refused, claiming that the transfers were gifts from Parker to them. This litigation followed.

The burden of proving that a transfer was an *inter vivos* gift is upon the person asserting the gift. *Chamberlain v. Chamberlain*, 287 A.2d 530, 531 (D.C.), *cert. denied*, 409 U.S. 892, 93 S.Ct. 132, 34 L.Ed.2d 149 (1972); *Harrington v. Emmerman*, 88 U.S.App.D.C. 23, 27, 186 F.2d 757, 761 (1950). "The requisites of a valid gift *inter vivos* are delivery, intention on the part of the donor to make a gift, and absolute disposition of the subject of the gift." *Murray v. Gadsden*, 91 U.S.App. D.C. 38, 49, 197 F.2d 194, 205 (1952). "Where the gift is first asserted after the death of the donor, the rule requires it to be established by clear and convincing evidence.... This is especially true where a confidential relation existed between the parties." *Myers v. Tschiffely*, 64 U.S.App. D.C. 17, 18, 73 F.2d 657, 658 (1934) (citations omitted). *See also Casey v. Topliffe*, 65 U.S.App.D.C. 100, 101, 80 F.2d 543, 544 (1935). *Cf.* D.C.Code § 14–302 (1981) (The Dead Man Statute).

Where a party opens a joint account for himself and another without consideration, the account is presumed opened for the convenience of that party. *Edstrom v. Kuder*, 351 A.2d 506, 509 n. 7 (D.C.1976); *Murray v. Gadsden, supra*, 91 U.S.App.D.C. at 44, 197 F.2d at 200. This presumption applies in all cases where the funds have been contributed by one of the parties even where the printed bank card signed by the parties recites a right of survivorship. *Imirie v. Imirie*, 100 U.S. App.D.C. 371, 372, 246 F.2d 652, 653 (1957). This presumption has the effect of shifting the burden of proof to the one claiming gift. *Harrington v. Emmerman, supra*, 88 U.S.App.D.C. at 27, 186 F.2d at 761.

---

1. The Davises also contend that the instructions were one-sided and slanted in favor of Altmann. They did not make this objection at trial.

Therefore, we need not, and do not, consider it on appeal. *Ceco Corp. v. Coleman*, 441 A.2d 940, 947 (D.C.1982).

Where a party has the burden of proving facts by clear and convincing evidence, courts sometimes state that there is a presumption against such facts which the party must rebut by clear and convincing evidence. *See Peters v. Peters*, 64 U.S.App. D.C. 331, 78 F.2d 215 (1935) (presumption that a will has been lawfully executed if it contains the genuine signature of the testator and witnesses was validly executed; presumption may be overcome by clear and satisfactory evidence). As the Court of Appeals of New York has stated:

[W]here a fiduciary relationship exists between parties, transactions between them are scrutinized with extreme vigilance, and clear evidence is required that the transaction was understood, and that there was no fraud, mistake or undue influence. Where those relations exist there must be clear proof of the integrity and fairness of the transaction, or any instrument thus obtained will be set aside or held as invalid between the parties.... Whenever ... the relations between the ... parties appear to be of such a character as to render it certain that they do not deal on terms of equality but that either on the one side from superior knowledge of the matter derived from a fiduciary relation, or from an overmastering influence, or on the other from weakness, dependence, or trust justifiably reposed, unfair advantage in a transaction is rendered probable, there the burden is shifted, the transaction is presumed void, and it is incumbent upon the stronger party to show affirmatively that no deception was practiced, no undue influence was used, and that all was fair, open, voluntary and well understood.

*Gordon v. Bialystoker Center and Bikur Cholim, Inc.*, 45 N.Y.2d 692, 698–99, 385 N.E.2d 285, 288–89, 412 N.Y.S.2d 593, 596–97 (1978) (citations omitted).

The validity of these legal principles is not seriously challenged by the Davises; indeed they could not be. Rather, they contend that once they produced competent evidence to rebut the presumption, the presumption falls away. In essence, they contend the presumption has the effect of placing upon them the burden of production of evidence only. Once they have done so, they contend, the presumption vanishes. This type of presumption is sometimes referred to as the "bursting bubble." *McCormick, Evidence* § 345 at 821–26 (2d ed. 1972). Under this theory of presumptions, it would generally be inappropriate for the court to instruct the jury about the presumption. *Id.* § 345 at 821. The Davises contend that the courts of the District of Columbia have adopted this theory of presumption, citing *Legille v. Dann*, 178 U.S. App.D.C. 78, 544 F.2d 1 (1976). They are in part correct and in part in error. It is the part on which they are in error that is the deathknell of their claim.

The court in *Legille* did apply the "bursting bubble" theory where conflicting presumptions were involved—the presumption of receipt by the addressee of a properly addressed, stamped and mailed letter versus the presumption of regularity of the Patent Offices procedures for handling incoming mail. However, *Legille* recognizes an exception to this theory for, as the court said:

We are mindful that some presumptions are founded in part upon exceptionally strong and visible policies, which have been said to persist despite proof rebutting the factual basis for the presumption. *See e.g.* C. McCormick, Evidence § 345 at 822–823 (2d ed. 1972).

*Id.*, at 84 n. 39, 544 F.2d at 7 n. 39.

We have also recognized exceptions. In *Koehne v. Price*, 68 A.2d 806 (D.C.1949), we were called upon to review a decision of a trial judge according full faith and credit to a Maryland judgment for monies due, rendered by a justice of the peace of Prince George's County. Koehne testified at trial that he had never been served with process in the Maryland proceedings and thus that court lacked in personam jurisdiction. Price testified to matters which tended to show that Koehne had been personally

served. The authenticated docket entries of the Maryland proceeding reflected personal service. The trial court found that Koehne's "testimony did not overcome the presumption of service arising from the recitals contained in the certified transcript of the Maryland proceedings." *Koehne, supra,* 68 A.2d at 809. In sustaining the ruling of the trial court we said:

> It has been said that a presumption of this sort continues until there is credible evidence to the contrary and ceases when there is uncontradicted evidence opposing the presumption. It has been held, however, that the latter part of the rule just stated is inapposite if the witness has an interest in the outcome of the case, and also that if the evidence opposing the presumption is contradictory or reasonably subject to contradictory interpretations the question becomes one for the trier of the facts. As was stated in *Falstaff Brewing Corporation v. Thompson,* 8 Cir., 101 F.2d 301, 304, "It is only when uncontradicted proof clearly and distinctly establishes a fact so that reasonable minds can draw but one inference, that the presumption disappears or is destroyed." It is perhaps worthy of some note in passing that many state cases hold that a presumption is never overcome by testimony, even though uncontradicted, if the trial court disbelieves the testimony.

> . . . .

... We conclude, in other words, that the trial court had the right to weigh the presumption ... against the testimony of defendant, an interested party, and in its discretion to conclude that the presumption outweighed the evidentiary value of defendant's testimony.

*Id.* 68 A.2d at 812–13 (footnotes omitted).

The public policy considerations undergirding the presumptions at issue in this case are of the highest magnitude. They are the need to prevent fraud, overreaching, and deceit, often culminating after the other party to the transaction is dead. This public policy has been reflected not only in judicial opinions but also in legislation such as The Dead Man Statute. Thus, we hold that the trial court did not err in instructing the jury on the existence of the presumptions and that the Davises had the burden of rebutting them by clear and convincing evidence. While the instructions may have been less than a model of clarity and precision, considering them as a whole, *District of Columbia v. Barnard,* 144 A.2d 418, 420 (D.C.1958), we find no error.

*Affirmed.*[2]

---

**2.** We note that while there are prepared jury instructions for criminal and civil cases, there are none for fiduciary cases. Perhaps this is a project which the outstanding fiduciary bar of this jurisdiction should consider undertaking.