**James DENNIS, Appellant,**

**v.**

**Linda EDWARDS, et al., Appellees.**

**No. 01–CV–999.**

District of Columbia Court of Appeals.

Argued Dec. 11, 2002.

Decided Sept. 18, 2003.

Darrel S. Parker, Washington, DC, for appellant.

Sunwoo Nam, Silver Spring, MD, for appellees.

Before WAGNER, Chief Judge, TERRY and STEADMAN, Associate Judges.

WAGNER, Chief Judge:

Appellant, James Dennis, as personal representative of the estate of Margaret B. Williams, deceased, commenced this action in the trial court against appellees, Linda Edwards and Georgia Mae Chirp Young, seeking, *inter alia,* a declaratory judgment that funds on deposit at First Union National Bank in the District of Columbia at the time of decedent's death belonged solely to her estate.[1] The complaint alleged that appellees had removed the funds after decedent's death and improperly converted them to their own use. The trial court granted appellees' motion to dismiss the case on the ground of *forum non conveniens (fnc)*. The personal representative argues that the trial court abused its discretion in granting the motion. We agree with the personal representative that the applicable considerations strongly favor his choice of forum in this jurisdiction for a suit filed on behalf of a decedent's estate being administered in the District to determine the decedent's interest in funds joint-ly held at the time of her death with one of the legatees under her Will. In this case, the personal representative sued in his representative capacity, as a court appointed fiduciary, standing in the shoes of the decedent. Therefore, in determining the *fnc* motion, the trial court should not have given controlling consideration to the personal representative's personal residence without regard to his representative status. Under the circumstances of this case, the appellees did not meet their burden of establishing that the personal representative's choice of forum should not be honored. Therefore, we reverse the trial court's order and remand the case for reinstatement and for further proceedings consistent with this opinion.

## I.

### *Factual Background*

The decedent, Margaret B. Williams, a resident of the District of Columbia, died testate in the District of Columbia on November 22, 2000. The Probate Division of the Superior Court admitted the decedent's Will to probate and appointed James Dennis, a resident of South Carolina, as personal representative of her estate. Appellee Georgia Mae Chirp Young is one of three surviving legatees under the decedent's Will. At the time of her death, decedent had cash on deposit in three accounts at the First Union National Bank in the District of Columbia. Some time prior to her death, decedent had placed Ms. Young's name on the accounts, which were held in both names at the time of decedent's death.

On January 26, 2001, Mr. Dennis, as personal representative of the decedent's estate, filed, on behalf of the decedent's estate, a Complaint for Declaratory Judg-

---

1. The original complaint also named First Union National Bank as a party defendant, but subsequently, the complaint was dismissed as to the bank.

ment and Injunctive Relief against the First Union National Bank and Ms. Young alleging that the funds in the accounts were the sole property of the decedent. On February 1, 2001, the trial court issued a Temporary Restraining Order prohibiting the bank and Ms. Young from transferring the cash on deposit in the accounts pending a determination of their ownership. In the mean time, alerted that the personal representative was attempting to take control of the accounts, Ms. Young withdrew the funds from the bank in the District of Columbia. In an amended answer to the personal representative's complaint, Ms. Young contended that "the Bank did turn over the balances of the accounts to [her] in South Carolina on January 22, 2001." The parties reached an agreement that Ms. Young would not dispose of the sum of $19,849.93 of the funds remaining under her control, and the trial court entered a consent order on February 16, 2001 directing and enjoining Ms. Young from disposing of that amount until further order of the court. The personal representative filed an amended complaint for declaratory judgment, conversion and to establish a constructive or resulting trust against Ms. Young and appellee, Linda Edwards, of the total amount removed from the decedent's accounts of $256,182.82. The complaint alleges that $232,000.00 of those funds were placed under the control of appellee Edwards in accounts at the First Reliance Bank and the Wachovia Bank in Florence, South Carolina. In her answer to the amended complaint, Ms. Young claimed that she had the right of survivorship to decedent's accounts. Ms. Edwards filed a similar answer and claimed that the money belonged to Ms. Young, who could dispose of it any way she wanted.

Appellees filed a motion to dismiss the action on the ground of *forum non conveniens*. They contended that dismissal was warranted because: (1) the money was removed to South Carolina four days after the action was filed in the District of Columbia; (2) it was inconvenient for them to travel to the District of Columbia for the trial; and (3) the personal representative had filed a similar action against them in South Carolina. In opposition to the motion, the personal representative asserted that the factors relevant to the determination of the motion favored jurisdiction in the District of Columbia and that the public interest factors outweighed any private interests. More specifically, he contended that: (1) decedent, a domiciliary and lifelong resident of the District, died owning the disputed assets, as well as real and other personal property, in the District; (2) that his appointment as personal representative and his fiduciary responsibility related to the estate were pursuant to the laws of the District of Columbia; (3) that the District has a substantial interest in ensuring the proper accounting of decedent's as sets and distribution of her estate; (4) that under local law, the funds improperly converted by appellees presumptively belonged to the decedent; (5) that appellees had submitted to the jurisdiction of the Superior Court of the District of Columbia; and (6) that, with the exception of appellees, none of the witnesses to be called at trial resided in South Carolina. As to the suit in South Carolina, counsel for the estate explained at argument that they had hired an attorney in South Carolina who had filed suit prematurely and that they had asked counsel there to dismiss the case after appellees submitted to the jurisdiction of the Superior Court and remained willing to do so.

The trial court granted the motion to dismiss for *forum non conveniens*, stating as its reasons that the parties, including the personal representative, resided in South Carolina, that the funds sought were

now in South Carolina, and that the personal representative had filed a suit against them there. The personal representative argues that the trial court abused its discretion in granting the motion.

## II.

### Legal Standards

■ In this jurisdiction, a statutory provision establishes the grounds for the dismissal of a case when there is a more suitable forum. *See* D.C.Code § 13–425 (2001). Section 13–425 provides that:

[w]hen any District of Columbia court finds that in the interest of substantial justice the action should be heard in another forum, the court may stay or dismiss such civil action in whole or in part on any conditions that may be just.

Although the authority to dismiss because of an inconvenient forum is statutorily based, this court has adopted the *forum non conveniens* analysis set forth by the Supreme Court in *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055 (1947). *Blake v. Professional Travel Corp.*, 768 A.2d 568, 572 (D.C.2001), *cert. denied*, 534 U.S. 1115, 122 S.Ct. 923, 151 L.Ed.2d 887 (2002) (citing *Coulibaly v. Malaquias*, 728 A.2d 595, 600 (D.C.1999)). The *Gulf Oil* analysis includes consideration of factors related to the private interest of the litigants and the public interest of the forum, which we describe in further detail *infra*. *See id*. While our review of the trial court's decision granting or denying such a motion is deferential, it includes, nevertheless, "an independent evaluation of the 'private' and 'public' factors enumerated in *Gulf Oil*." *Jimmerson v. Kaiser Found.*, 663 A.2d 540, 542 (D.C. 1995) (quoting *Jenkins v. Smith*, 535 A.2d 1367, 1369 (D.C.1987) (en banc)). In further explaining this standard of review, we have said that

first we apply "close scrutiny" to the specific factors identified and evaluated by the trial court; once we are satisfied that the trial court took the proper factors into account, we adopt a deferential approach in determining whether the trial court's decision fell within the "broad discretion" committed to it.

*Coulibaly*, 728 A.2d at 601 (citation omitted); *accord, Blake*, 768 A.2d at 572. Essentially, this court must determine whether the trial court has evaluated the motion to dismiss for *forum non conveniens* in light of the relevant factors. *Blake*, 768 A.2d at 572 (citing *Smith v. Alder Branch Realty Ltd.*, 684 A.2d 1284, 1289 (D.C. 1996)) (other citation omitted).

## III.

### Discussion

The trial court was of the view that this jurisdiction would have little interest in the dispute now that the funds sought on behalf of the decedent's estate were being held by appellees in their home state, South Carolina, where the personal representative also resided. However, the trial court's analysis fails adequately to take into account all of the relevant private and public interest factors involved in this case, which we now consider.

### A. The Public Interest Factors

■ In a *forum non conveniens* analysis, the public interest factors for consideration include:

(1) administrative difficulties caused by local court dockets congested with foreign litigation; (2) the local interest in having localized controversies decided at home; (3) the unfairness of imposing the burden of jury duty on the citizens of the forum having no relation to the litigation[;] and (4) the avoidance of unnecessary problems in conflict of laws in the

interpretation of the laws of another jurisdiction.

*Mills v. Aetna Fire Underwriters Ins. Co.,* 511 A.2d 8, 10 (D.C.1986) (citing *Gulf Oil, supra,* 330 U.S. at 508–09, 67 S.Ct. 839). Each of these factors, properly analyzed, supports maintenance of the action in the District of Columbia rather than South Carolina.

■ First, the case cannot be reasonably characterized as foreign litigation. This action was filed on behalf of an estate of a decedent, a lifelong resident of the District of Columbia, who was domiciled here at the time of her death. "The Probate Division of the Superior Court has subject matter jurisdiction over the estate of any decedent who was domiciled in the District at the time of death." *In re Estate of Delaney,* 819 A.2d 968, 987 (D.C. 2003) (citations omitted); *see also In re Estate of Dapolito,* 331 A.2d 327, 328 (D.C. 1975) (citations omitted). The controversy centers primarily on the interest of the estate in the accounts that decedent established which, on the date of her death, were held in the District in her name jointly with one of the three legatees under her Will. The District has a significant interest in ensuring that the assets of deceased residents are collected, applied to their just debts and claims, and distributed in accordance with the terms of the decedent's Will or the laws of intestacy of the District of Columbia. *See generally* D.C.Code § 19–301 (2001); §§ 20–101 to – 1305 (2001). The Probate Division of the Superior Court has the power, as it did in this case, to appoint a personal representative whose duty it is "to take possession and control of the decedent's estate and to maintain any action reasonably necessary ... to recover possession of estate property." *Rearden v. Riggs Nat'l Bank,* 677 A.2d 1032, 1038 (D.C.1996) (citing D.C.Code § 20–702 (1989 Repl. & Supp.

1995) (footnote omitted)). Under the law of this jurisdiction, the personal representative has the same standing to sue as the decedent did at the time of her death. *Id.* (citing D.C.Code § 20–701(c) (Supp. 1995) (footnote omitted)).

In furtherance of his fiduciary responsibility, the personal representative filed the present action for a declaratory judgment as to the ownership of the decedent's accounts, for conversion and the imposition of a constructive trust upon funds which were held by the decedent in the District at the time of her death, but removed by a competing claimant without awaiting the resolution of the issue by the court. This court has held that the Superior Court's Probate Division has "specific subject matter jurisdiction over the dispute as to the ownership of the funds from the jointly-registered accounts because the dispute [is] a 'claim ... existing between' the [personal representative] and a legatee." *Delaney, supra,* 819 A.2d at 987 (quoting D.C.Code § 11–921(a)(5)(A)(vi)). Thus, the question of who is entitled to the proceeds from the decedent's local account as between her personal representative and other claimants upon her death is unquestionably a matter of local concern which should be resolved in this jurisdiction. The fact that a non-resident claimant asserts a right of survivorship in the proceeds of a bank account in the District and even removes them before the court can determine the rightful owner does not change the local nature of the controversy. Indeed, in the *Delaney* case, this court held that the jurisdiction of the Superior Court's Probate Division extended to a determination of the ownership of jointly held funds under similar circumstances even though the accounts had been maintained in another jurisdiction, Virginia. 819 A.2d at 987. In the present case, that the funds were on deposit in the District at the time of decedent's death presents an

even stronger case for the exercise of jurisdiction and the establishment of the local interest for purposes of deciding a *fnc* motion. Although the trial court attached significance to the fact that the funds were transferred or removed from the District and deposited in banks in South Carolina, that does not alter the connection of the controversy to the District. Simply removing the funds to another jurisdiction is insufficient to defeat the court's jurisdiction over a controversy involving the ownership of the assets held by decedent at the time of death or diminish this jurisdiction's interest in the controversy. *See id.*

That the proper disposition of accounts such as those in controversy are matters of great local concern is expressed in our public policy as set forth in our statutory and case law. In this jurisdiction, it was long held that "[w]here a party opens a joint account for himself and another without consideration, the account is presumed opened for the convenience of that party." *Davis v. Altmann,* 492 A.2d 884, 885 (D.C. 1985) (citing *Edstrom v. Kuder,* 351 A.2d 506, 509 n. 7 (D.C.1976)) (other citation omitted). Local policy considerations of the highest magnitude undergirded this presumption, which operated to shift the burden of proof to the one claiming that a gift was intended by the contributing party. *See id.* at 887. These considerations served "to prevent fraud, overreaching, and deceit, often culminating after the other party to the transaction is dead." *Id.* More recently, legislation has been enacted addressing these concerns. The District of Columbia's Uniform Nonprobate Transfer on Death Act, D.C.Code §§ 19–601—603 (2001) contains provisions that recognize the various purposes for which joint accounts might be held and clarifies the rights and relationships among joint account holders, including survivorship rights. *See* D.C.Code §§ 19–602.3–602.4. The consistent strong local interest in

these issues is demonstrated by prior case law and this more recently enacted legislation. Thus, the public interest factors, identified in *Gulf Oil, supra,* weigh strongly in favor of maintaining litigation in the District of Columbia and having any burdens associated with the litigation borne by our local courts and District citizens. *See Gulf Oil,* 330 U.S. at 508–09, 67 S.Ct. 839.

▮ The final public interest factor, avoidance of unnecessary problems with conflict of laws and interpreting the laws of another jurisdiction, are not presented here. The nature of the personal representative's claims appears to involve only the application of local law. Here, the estate's claim is for a declaratory judgment as to the decedent's interest in funds held at the time of her death in the District as against the claim of one whose name had been placed on the account during decedent's lifetime. This is clearly a matter of local law. *See Delaney, supra,* 819 A.2d at 988–89. No circumstances have been presented which support the conclusion that South Carolina law should apply to determine this purely local question. Even assuming that some choice of law question exists, which we do not glean from this record, the District's choice of law principles favor application of District law to the determination of the estate's interest in decedent's accounts upon her death. "In determining which jurisdiction's law will apply to substantive issues, District of Columbia courts use a government interest analysis which requires first a court evaluation of the governmental policies underlying the applicable conflicting laws and then a determination as to which jurisdiction's policy would be most advanced by having its law applied to the facts of the case." *Delaney,* 819 A.2d at 988 (citations omitted). Here, the District's interest are substantial, as above

described, and there appears to be no basis for any other jurisdiction having a greater interest in the determination of the interest of a local estate in what was a locally held bank account at the time of decedent's death. *See id.* at 990; *see also Davis, supra,* 492 A.2d at 885–86.

■■■ Even on the theory of conversion, also advanced by the personal representative in the complaint, no clear conflict of laws issue appears to be presented. The tort of conversion involves "an unlawful exercise of ownership, dominion and control over the personalty of another in denial or repudiation of his right to such property." *Blanken v. Harris, Upham & Co., Inc.,* 359 A.2d 281, 283 (D.C.1976) (citing *Shea v. Fridley,* 123 A.2d 358 (D.C. 1956)). "[T]he personal representative of a decedent is vested with legal title to all property, both real and personal, owned by the decedent at the time of her death." *Rearden, supra,* 677 A.2d at 1038 (citing D.C.Code § 20–105 [2] (1989 Repl.)). A conversion may be said to relate to the moment of taking. *See DeKine v. District of Columbia,* 422 A.2d 981, 986 (D.C.1980). Assuming that there was an unlawful taking in derogation of the rights of the estate, an issue that we need not decide here, that moment first occurred when the decedent's accounts in the District were

closed out and the personal representative was denied access to them, apparently at the behest of Ms. Young. Whether there was a conversion in the District at that time would be decided appropriately under District law.[3]

### B. *The Private Interest Factors*

■■■ The private interest factors in the determination of a motion to dismiss for inconvenient forum include, among others: (1) the relative ease of access to proof; (2) the availability of compulsory process to secure the attendance of unwilling witnesses and the cost of securing the attendance of willing witnesses; (3) other practical problems related to the ease, expense and expedition of trial; (4) any evidence that the choice of forum was made to harass defendant; and (5) the relative advantages or disadvantages to a fair trial. *Coulibaly, supra,* 728 A.2d at 600 (quoting *Mills, supra,* 511 A.2d at 10 (other citation omitted)). Many of these private interests favor maintaining the case in the District.

First, the relative ease and access to proof favors litigation in the District of Columbia. The controversy involves the determination of the rights of the decedent's estate in bank accounts held at the time of her death in the District where the

---

2. D.C.Code § 20–105 (2001) provides in pertinent part:
   [A]ll property of a decedent shall be subject to this title and, upon the decedent's death, shall pass directly to the personal representative, who shall hold the legal title for administration and distribution of the estate.

3. The personal representative's theory of constructive trust presents a more difficult question as to whether another jurisdiction's law is implicated. " 'A constructive trust arises where a person who holds title to property is subject to an equitable duty to convey it to another on the ground that he would be unjustly enriched if permitted to retain it.' "

*Gray v. Gray,* 412 A.2d 1208, 1210 (D.C.1980) (quoting 4A POWELL ON REAL PROPERTY P. 594 at 48–3 and 48–4 (1979)); (citing *Hertz v. Klavan,* 374 A.2d 871, 873 (D.C.1977)). Appellees are alleged to be holding decedent's funds in South Carolina. However, we need not decide whether South Carolina's law has any applicability or whether its interests would be stronger than those of the District's as it relates to constructive trust. The public factors favoring maintenance of this action in the District are so strong that even if South Carolina law had to be interpreted in connection with this particular theory, it would not change the analysis for purposes of the *fnc* motion.

estate is being administered. Information on the decedent's contributions to the accounts, the actions taken by her during her lifetime which might bear upon her intentions with respect to the accounts, and the bank records related to the accounts at the pertinent time can be expected to be most readily accessible in the District. Such matters are relevant to proof of the estate's interest in the accounts. *See Davis, supra,* 492 A.2d at 885. Second, the personal representative has indicated that, other than appellees, who have submitted themselves to the jurisdiction of the court, none of the witnesses reside in the alternate forum, South Carolina. While appellees claim that the employees and bank officers who determined that appellee Young had the right of survivorship are in South Carolina, they made no claim in their *fnc* motion that these are fact witnesses. Rather, they contend that these individuals made a legal determination that appellee Young had a right of survivorship, which is the question that the court is being asked to decide in this controversy. Therefore, we are not persuaded that these are essential witnesses to appellees' case for whom there should be concern about securing their presence by compulsory process. In any event, the banks involved in the transfer of the funds formerly held by the decedent have branches in this jurisdiction, and therefore, their duly authorized representatives should be amenable to process in the District. Third, there is no evidence that the personal representative selected this forum in order to harass appellees. This forum is the logical one, as it is the location of the court that has jurisdiction over the decedent's estate by reason of her domicile here, the determination of claims against the estate, and the collection and distribution of her assets. It is the jurisdiction from which the personal representative derives his authority to act on behalf of the

estate. It is also the location where decedent established and held the disputed assets until her death, the critical time for establishing the estate's interest. There is a central interest of the local jurisdiction in the dispute as above-described. South Carolina has no similar connection to the dispute. Fourth, that appellees reside in South Carolina is a factor weighing in their favor in the private interest analysis, but it is not a dispositive one.

▬ Generally, "unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." *Mills, supra,* 511 A.2d at 10 (quoting *Gulf Oil, supra,* 330 U.S. at 508, 67 S.Ct. 839). Here, the personal representative chose the forum of the domiciliary whose estate he represents and the jurisdiction having authority over the estate. Although typically, the strong presumption favoring plaintiff's choice of forum is given less deference when he does not reside in this jurisdiction, *Mills,* 511 A.2d at 11 (citation omitted), that principle has little or no applicability in the circumstances of this case. The assumption underlying this principle is that where the plaintiff is a non-resident, there is less reason to assume that his choice of forum is convenient. *Id.* That assumption lacks validity here because the personal representative does not sue in his individual capacity, but in a representative one. The personal representative has the same standing to sue as the decedent had at death. D.C.Code § 20–701(c) (2001). Circumstances surrounding the assets of, and debts and claims against, the decedent's estate are likely to have some nexus to the place of her residence, rather than to that of the personal representative. The whole statutory scheme governing decedents' estates in this jurisdiction contemplates that anyone who undertakes to act as personal representative of a decedent's estate will

be expected to perform services in this jurisdiction, including as a party to litigation involving the estate. *See generally* D.C.Code §§ 20–701 to –753 (2001). Indeed, as a condition of appointment, a non-resident must file "a written consent to personal jurisdiction in any action brought in the District of Columbia against such personal representative, where service of process is effected ... pursuant to the provisions of section 20–303(b)(7)." D.C.Code § 20–501 (2001). D.C.Code § 303(b)(7) excludes non-residents of the District from appointments as personal representatives, "unless such person files an irrevocable power of attorney with the Register [of Wills] designating the Register and the Register's successors in office as the person upon whom all notices and process issued by a competent court in the District of Columbia may be served with the same effect as personal service, in relation to all suits or matters pertaining to the estate in which the letters [of appointment] are to be issued." Therefore, any inconvenience to the personal representative individually is irrelevant because he must agree to service of process in order to litigate in the forum of the estate. Under the circumstances of this case, we conclude that the personal residence of the personal representative is not a material factor in this analysis and that his choice of forum in the jurisdiction of the estate he represents applies with maximum force.

*Conclusion*

The foregoing considerations show that both the public and private interest factors weigh so strongly in favor of maintaining jurisdiction in the District of Columbia that the trial court abused its discretion in deciding otherwise. Therefore, the order appealed from hereby is reversed with instructions to the trial court to reinstate the case, conditioned upon the personal representative's dismissal of the case he filed against appellees in South Carolina.

*So ordered.*